**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| **KAJEET, INC.,** | |
| **Plaintiff,** | |
| **v.** | **C.A. No. 19-CV-02370-MN** |
| **GRYPHON ONLINE SAFETY, INC.,** | |
| **Defendant.** | |

**GRYPHON ONLINE SAFETY, INC'S MEMORANDUM OF LAW IN SUPPORT OF ITS**
**FED. R. CIV. P. 12(b)(6) MOTION TO DISMISS KAJEET, INC.'S COMPLAINT**

OF COUNSEL:

Sanjeev Kumar
Hunt Pennington Kumar & Dula PLLC
609 Castle Ridge Road, Suite 315
Austin, TX 78746
(512) 766-6082
skumar@hpkdlaw.com

George Pazuniak (No. 478)
O'Kelly & Ernst, LLC
824 N. Market Street, Suite 1001A
Wilmington, DE 19801
302-478-4230
gp@del-iplaw.com

*Counsel for Defendant*
*Gryphon Online Safety, Inc.*

Dated: May 8, 2020

i

# TABLE OF CONTENTS

INTRODUCTION ........................................................................................................... - 1 -

SUMMARY OF ARGUMENTS ..................................................................................... - 1 -

STATEMENT OF FACT ................................................................................................. - 2 -

    *a.*   *The Two Claims In Suit* ................................................................................ - 2 -

    *b.*   *Kajeet's Complaint* .................................................................................... - 3 -

ARGUMENT ................................................................................................................... - 3 -

   I.   THE APPLICABLE LAW ........................................................................... - 3 -

  II.   THE CLAIMS ARE UNPATENTABLE UNDER 35 U.S.C. § 101 ........................... - 4 -

    *a.*   *Pleading Patentability Arguments Does Not Avoid Dismissal* .................................... - 4 -

    *b.*   *The Asserted Claims Fail Alice Step 1* ........................................................ - 5 -

    *c.*   *The Asserted Claims Fail Alice Step 2* ........................................................ - 10 -

    *d.*   *All Claims of Both Patents Are Patent Ineligible* ............................................ - 12 -

 III.   COUNTS I AND II MUST BE DISMISSED FOR FAILURE TO PLEAD PATENT MARKING ..... - 13 -

 IV.   COUNTS I AND II FAIL TO PLAUSIBLY PLEAD DIRECT INFRINGEMENT .......................... - 14 -

  V.   COUNTS I AND II FAIL TO PLAUSIBLY PLEAD INDIRECT INFRINGEMENT ....................... - 16 -

CONCLUSION ............................................................................................................... - 19 -

# TABLE OF AUTHORITIES

**CASES**

*10x Genomics, Inc. v. Celsee, Inc.*,
    2019 WL 5595666 (D. Del. 2019) _____ - 16 -

*Alice Corp. Pty. Ltd. v. CLS Bank Int'l*,
    573 U.S. 208 (2014)._____ - 10 -

*Arctic Cat Inc. v. Bombardier Recreational Prod. Inc.*,
    876 F.3d 1350 (Fed. Cir. 2017). _____ - 14 -

*Bos. Sci. Corp. v. Nevro Corp.*,
    415 F. Supp. 3d 482 (D. Del. 2019) _____ - 15 -, - 17 -

*Bozeman Fin. LLC v. Fed. Reserve Bank of Atlanta*,
    955 F.3d 971 (Fed. Cir. 2020)_____ - 9 -

*BSG Tech LLC v. Buyseasons, Inc.*,
    899 F.3d 1281, (Fed. Cir. 2018) _____ - 12 -

*CardioNet, LLC v. InfoBionic, Inc*,
    ___F.3d___, 2020 WL 1897237 (Fed. Cir. 2020) _____ - 10 -

*Customedia Techs., LLC v. Dish Network Corp.*,
    951 F.3d 1359 (Fed. Cir. 2020)_____ - 11 -

*Disc Disease Sols. Inc. v. VGH Sols., Inc.*,
    888 F.3d 1256 (Fed. Cir. 2018)_____ - 14 -

*Dodots Licensing Sols. LLC v. Lenovo Holding Co., Inc.*,
    2018 WL 6629709 (D. Del. 2018) _____ - 18 -

*Ericsson Inc. v. TCL Commc'n Tech. Holdings Ltd.*,
    955 F.3d 1317 (Fed. Cir. 2020)_____ - 6 -, - 7 -, - 8 -

*Express Mobile, Inc. v. DreamHost LLC*,
    2019 WL 2514418 (D. Del. 2019) _____ - 14 -

*Fowler v. UPMC Shadyside*,
    578 F.3d 203, 210 (3d Cir. 2009) _____ - 4 -

*Fujitsu Ltd. v. Netgear Inc.*,
    620 F.3d 1321 (Fed. Cir. 2010)_____ - 16 -

*i4i Ltd. P'ship v. Microsoft Corp.*,
   598 F.3d 831 (Fed. Cir. 2010), aff'd, 564 U.S. 91 (2011) _____ - 16 -

*Innovative Global Sys., LLC v. Keep Truckin, Inc.*,
   2020 WL 1443201 (D. Del. 2020) _____ - 3 -, - 6 -

*Interval Licensing LLC v. AOL, Inc.*,
   896 F.3d 1335 (Fed. Cir. 2018)_____ - 8 -, - 11 -

*IP Commc'n Sols., LLC v. Viber Media (USA) Inc.*,
   2017 WL 1312942 (D. Del. 2017) _____ - 18 -, - 19 -

*Linear Tech. Corp. v. Int'l Trade Comm'n*,
   566 F.3d 1049 (Fed. Cir. 2009)_____ - 16 -

*LoganTree LP v. Omron Healthcare, Inc.*,
   2019 WL 4538730 (D. Del. 2019) _____ - 16 -, - 18 -

*Lucent Techs., Inc. v. Gateway, Inc.*,
   580 F.3d 1301 (Fed. Cir. 2009)_____ - 16 -

*Mammana v. Fed. Bureau of Prisons*,
   934 F.3d 368 (3d Cir. 2019) _____ - 4 -

*McCoy v. Favata*,
   2020 WL 1929040 (D. Del. 2020) _____ - 4 -

*Nalco Co. v. Chem-Mod, LLC*,
   883 F.3d 1337 (Fed. Cir. 2018)_____ - 17 -

*Ormco Corp. v. Align Tech., Inc.*,
   463 F.3d 1299 (Fed. Cir. 2006)_____ - 16 -, - 18 -

*Purohit v. Legend Pictures, LLC*,
   2020 WL 1441614 (D. Del. 2020) _____ - 17 -

*SAP Am., Inc. v. InvestPic, LLC*,
   898 F.3d 1161 (Fed. Cir. 2018)_____ - 13 -

*SuperInterconnect Techs. LLC v. HP Inc.*,
   2019 WL 6895877 _____ - 15 -

*Tenaha Licensing LLC v. Vocera Commc'ns, Inc.*,
   2020 WL 30489 (D. Del. 2020) _____ - 18 -

*Vorchheimer v. Philadelphian Owners Ass'n*,
   903 F.3d 100 (3d Cir. 2018) _____ - 5 -

*Wildcat Licensing WI LLC v. Faurecia S.A.*,
   2019 WL 7067090 (D. Del. Dec. 23, 2019) _____ - 17 -

**STATUTES**

35 U.S.C. § 101 _____ - 1 -, - 4 -

35 U.S.C. § 271(c) _____ - 19 -

35 U.S.C. § 287(a) _____ - 1 -, - 3 -, - 13 -

**RULES**

Fed. R. Civ. P. Rule 12(b)(6) _____ *-passim -*

**INTRODUCTION**

Plaintiff Kajeet, Inc. ("Kajeet") filed the present Complaint against Defendant Gryphon Online Safety, Inc. ("Gryphon") asserting infringement of claim 27 of U.S. Patent No. 8,667,559 ("the '559 patent") and claim 27 of U.S. Patent No. 7,899,438 ("the '438 patent").  Because the patents are not directed to patent eligible subject matter under Section 101, and because the Complaint otherwise fails to state a plausible claim for relief, Gryphon respectfully requests that this Court dismiss Kajeet's Complaint under Fed. R. Civ. P. Rule 12(b)(6).

**SUMMARY OF ARGUMENTS**

1.  Kajeet's Complaint fails to state a claim upon which relief can be granted because the asserted claims of both '559 patent and '438 patent are directed to patent-ineligible subject matter and are thus invalid under 35 U.S.C. § 101.  Neither claim involves any physical or tangible components beyond standard networks, phones and servers, and all limitations of the claims are purely abstract.  Thus, both claims fail Alice Step 1.

2.  The claims also do not contain any additional limitations that supply an inventive concept.  All the limitations are merely routine and utilize well-known functions of generic computer components.

3.  Kajeet's Complaint must also be dismissed because the Complaint fails to plead compliance with 35 U.S.C. § 287(a).

4.  Kajeet's Complaint must also be dismissed because the Complaint fails to plausibly allege infringement of the '559 patent and '438 patent, as Kajeet fails to properly plead either direct or indirect infringement.

## STATEMENT OF FACT

**a.  The Two Claims In Suit**

The Complaint pleads infringement of Claim 27 of the '438 patent, a product claim, and Claim 27 of the '559 patent, a method claim.  The '559 patent is a continuation of the application that resulted in the '438 patent, and thus, both patents share a common specification.

The two patents disclose and claim the abstract idea of a software element on a communication or computing device that can restrict access to the device based on pre-defined policies.  The patent claims do not restrict the devices, and any conventional generic devices is encompassed by the claims, and the remainder of the disclosures and the asserted claims is purely functional in nature.

The two asserted claims are quoted below.  Although one is a product and the other is a method claim, and some of the words are different, both claims are directed to a system and method in which a computing device includes an application that can either permit or deny access based on pre-defined policies:

| **Claim 27 of '438 Patent** | **Claim 27 of '559 Patent** |
| --- | --- |
| A system for managing in real-time a communication device used by a user on a communication network, comprising: | A method for controlling a computing device configured to execute a function using a communication network managed by a service provider, the method comprising: sending to a server a request to communicate with a remote computing device over the communication network; |
| a policy decider housed within a network device on the communication network for storing a list of policies that control one or more features or functions associated with the communication device and for automatically deciding to accept or deny a request sent to or from the communication device to perform the features or functions based on one or more policies from the list of policies; and | receiving in real-time from the server a decision granting or denying the request, the decision being based on a policy stored at the server and configured by an administrator; and |
| a policy enforcer housed within a network device on the communication network for | enforcing the decision by enabling a communication with the remote computing |

| | |
|---|---|
| communicating the request to the policy decider and enforcing a decision by the policy decider as to whether the request has been accepted or denied by either notifying the user of the denied request and taking one or more actions consistent with the denied request or taking one or more actions consistent with the accepted request. | device over the communication network when the decision grants the request and by disabling the communication when the decision denies the request, the communication being enabled or disabled without storing the policy on the computing device. |

In both patents, neither the claims nor the specification disclose any physical or tangible components beyond the standard conventional generic items of a phone, network, server and switching center. All other disclosures of the patents and the limitations of the claims are purely functional, and the functions are routine and performed in a routine manner in conjunction with the conventional generic equipment.

### b. **Kajeet's Complaint**

Kajeet's Complaint asserts two Counts, one for each of the two asserted patents. Count I pleads direct infringement, inducement to infringe and contributory infringement of "at least claim 27 of the '559 Patent." (¶ 41). Count II pleads direct infringement, inducement to infringe and contributory infringement of "at least claim 27 of the '438 Patent." (¶ 59).

Kajeet's Complaint does not include any reference to 35 U.S.C. § 287(a) or patent marking. The Complaint does not suggest that Defendant Gryphon had any knowledge of either patent until Gryphon was served with Complaint.

## ARGUMENT

### I. THE APPLICABLE LAW

The laws applicable to the present motion are set forth in *Innovative Glob. Sys., LLC v. Keep Truckin, Inc*., 2020 WL 1443201 at *2 (D. Del. 2020), and Sections IA (Motion to Dismiss for Failure to State a Claim), IB (Patent-Eligible Subject Matter) and IC (Pleading Direct Infringement) of the "Legal Standards" portion of that decision are referenced and followed here.

## II.  THE CLAIMS ARE UNPATENTABLE UNDER 35 U.S.C. § 101

The respective Claims 27 of the two asserted patents are the only claims specifically pled by Plaintiff Kajeet.  The two claims are representative of all the claims of the two patents.

### a.  Pleading Patentability Arguments Does Not Avoid Dismissal

Kajeet presumably anticipated that the two claims asserted in this case are subject to dismissal for patent ineligibility under 35 U.S.C. § 101.  To forestall that dismissal, Kajeet's Complaint is written as essentially an argument for patent eligibility.

To be sure, a Court must consider the pleadings of the Complaint on a § 101 motion. However, the normal Rule 12(b)(6) standards still apply, and the Court will accept "all of the complaint's well-pleaded facts as true" but will "disregard any legal conclusions." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009); *Mammana v. Fed. Bureau of Prisons*, 934 F.3d 368, 372 (3d Cir. 2019) ("In assessing the factual content of the complaint, we disregard those allegations that are no more than conclusions, but assume the veracity of all well-pleaded factual allegations") (internal citations omitted); *McCoy v. Favata*, 2020 WL 1929040 at *2 (D. Del. 2020).  Here, Kajeet does not plead any *facts* relevant to the patent eligibility issue.  To the contrary, the Complaint is written as a legal brief with legal conclusions.

Further, the Complaint not only includes legal conclusions, but the arguments are irrelevant to the § 101 issues.  For example, much of the Complaint is devoted to an exposition of how allegedly these two great patents solved the problem of restricting access to content on computing devices.  Sadly lacking in the analysis is anything that would demonstrate that the limitations of the two claims in suit were more than abstract ideas.  Kajeet pleads no facts relevant to whether the limitations are abstract.  Indeed, the Complaint never uses the word "abstract" or "idea."

Further, the pleadings cannot change the plain language of the claims.  The method of Claim 27 of the '599 patent requires only three steps: (i) "sending to a server a request to communicate"; (ii) "receiving in real-time from the server a decision granting or denying the request" where the "decision [is] based on a policy; and (iii) enforcing the decision by enabling or disabling the communication.

Similarly, after stripping immaterial verbiage, product Claim 27 of the '438 patent requires only (i) a "policy decider" for automatically deciding to accept or deny a request sent to or from the communication device; and (ii) a "policy enforcer" for communicating a request to the policy decider and enforcing a decision by the policy decider.  In short, Claim 27 covers any device where a user enters a request, the request is processed pursuant to some pre-defined policy, and then either the user is given access or not.  There is nothing more to the claims, and no amount of verbiage in the Complaint can change the basic facts.

Finally, there is one other reason that the Complaint allegations must be disregarded. The Complaint includes the patents themselves as exhibits, and, to the extent that Kajeet's pleadings are inconsistent with the specification and the asserted claims of the patents, then the patent language controls.  The law is well-settled that if the Complaint "exhibits contradict [the] allegations in the complaint, the exhibits control."  *Vorchheimer v. Philadelphian Owners Ass'n*, 903 F.3d 100, 112 (3d Cir. 2018).

Here, Kajeet's "§ 101" pleadings are essentially nothing more than irrelevant legal conclusions and legal arguments that contradict the patent specifications and claims.  The pleadings cannot make a silk purse out of a sow's ear.

b.  **The Asserted Claims Fail *Alice* Step 1**

As previously noted, the two asserted claims, combined, refer only to conventional

generic computing or communication devices, networks and servers.  Such conventional generic

computers are not viewed as physical or tangible components for § 101 purposes.  Further, the

specification of the two patents also fails to disclose any physical or tangible components beyond

the conventional and generic communication devices (such as cellular phones), networks, servers

and switching centers.

Thus, this case is unlike, for example, the patent claim in *Innovative Global Systems*,

where the Court relied on the fact that the claim there required "an onboard system that

physically exists and uses tangible components specifically adapted to continuously monitor

certain data from the vehicle data bus, analyze that data to generate a compliance status and

signal for a driver based on hours of service and transmit that data to a portable device." 2020

WL 1443201 at *6.

After stripping immaterial verbiage, the claimed method is nothing more than sending a

request, having a decision made as to whether the request comports with pre-defined policies,

and then either accepting or rejecting a communication. Similarly, after stripping immaterial

verbiage, the product claim requires only (i) a "policy decider" for automatically deciding to

accept or deny a request sent to or from the communication device; and (ii) a "policy enforcer"

for communicating a request to the policy decider and enforcing a decision by the policy decider.

In short, the claims cover any instance of a user entering a request, and then processing the

request pursuant to pre-defined policies, and then either the user is given access or not.

These are typical "abstract ideas."  The presently asserted claims cannot be

distinguished from the claim considered in *Ericsson Inc. v. TCL Commc'n Tech. Holdings Ltd*.,

955 F.3d 1317 (Fed. Cir. 2020).  The *Ericsson* claims were, as here, directed to controlling

access to devices.  The claims were far more complex and detailed than the present claims, but

the Court held them unpatentable.  The claim read:

> A system for controlling access to a platform, the system comprising:
>
> a platform having a software services component and an interface component, the interface component having at least one interface for providing access to the software services component for enabling application domain software to be installed, loaded, and run in the platform;
>
> an access controller for controlling access to the software services component by a requesting application domain software via the at least one interface, the access controller comprising:
>
> an interception module for receiving a request from the requesting application domain software to access the software services component;
>
> and a decision entity for determining if the request should be granted wherein the decision entity is a security access manager, the security access manager holding access and permission policies; and
>
> wherein the requesting application domain software is granted access to the software services component via the at least one interface if the request is granted.

The Court held that "[c]ontrolling access to resources is exactly the sort of process that 'can be performed in the human mind, or by a human using a pen and paper,' which we have repeatedly found unpatentable."  *Id*. at *7.  The claims here also can be easily done by humans, because the claims are nothing more than receipt of a request followed by an either "yes" or "no" depending on a static policy—something humans encounter every time they call a service center or banks offering or denying loans to applicants based on suitability and intended use.  The upshot is that here, as in *Ericsson,* a request is made for access to a resource, that request is received and evaluated, and then the request is either granted or not.

In *Ericsson*, the patentee also defended the claims because the claims were specific to mobile phones.  The Federal Circuit disagreed, holding that "we have repeatedly found the concept of controlling access to resources via software to be an abstract idea."  *Id.*  Ericsson finally argued that the claims "solve the specific computer problem . . . of controlling app access

- 7 -

in resource-constrained mobile phones." The Federal Circuit again disagreed, because, *inter alia*, the claims did not "ha[ve] the specificity required to transform a claim from one claiming only a result to one claiming a way of achieving it." *Id. at \*8.* In *Ericsson*, as here, the claims are drafted functionally. The claims are silent as to how access is controlled, and in both, the claims "merely make generic functional recitations that requests are made and then granted," and "[m]erely claiming 'those functions in general terms, without limiting them to technical means for performing the functions that are arguably an advance,' does not make a claim eligible at step one." *Id.*

Although *Ericsson* is so directly on point as to be dispositive, it may be noted that there are a host of patent claims in the same general area of technology that were more complex and less abstract than the claims here, but which the Federal Circuit had held did not pass *Alice* Step 1. See, for example:

<u>Unpatentable Claims</u>

*Interval Licensing LLC v. AOL, Inc.*, 896 F.3d 1335 (Fed. Cir. 2018):

> A computer readable medium, for use by a content display system, encoded with one or more computer programs for enabling acquisition of a set of content data and display of an image or images generated from the set of content data on a display device during operation of an attention manager, comprising:
>
> [1] acquisition instructions for enabling acquisition of a set of content data from a specified information source;
>
> [2] user interface installation instructions for enabling provision of a user interface that allows a person to request the set of content data from the specified information source;
>
> [3] content data scheduling instructions for providing temporal constraints on the display of the image or images generated from the set of content data;
>
> [4] display instructions for enabling display of the image or images generated from the set of content data;
>
> [5] content data update instructions for enabling acquisition of an updated set of

content data from an information source that corresponds to a previously acquired set of content data;

[6] operating instructions for beginning, managing and terminating the display on the display device of an image generated from a set of content data;

[7] content display system scheduling instructions for scheduling the display of the image or images on the display device;

[8] installation instructions for installing the operating instructions and content display system scheduling instructions on the content display system; and

[9] audit instructions for monitoring usage of the content display system to selectively display an image or images generated from a set of content data.

*Bozeman Fin. LLC v. Fed. Reserve Bank of Atlanta*, 955 F.3d 971, 976–77 (Fed. Cir. 2020):

1. A computer implemented method for detecting fraud in financial transactions during a payment clearing process, said method comprising:

receiving through one of a payer bank and a third party, a first record of an electronic financial transaction from at least one of the following group: a payer, a point-of-sale terminal, an online account and a portable electronic device;

storing in a database accessible by each party to said payment clearing process of said electronic financial transaction, said first record of said electronic financial transaction, said first record comprising more than one parameter;

receiving at said database at least a second record of said electronic financial transaction from one or more of a payee bank and any other party to said payment clearing process as said transaction moves along said payment clearing process, wherein said second record comprises at least one parameter which is the same as said more than one parameter of said first record;

each of said first and second records received at said database comprise at least two of the same said more than one parameters;

determining by a computer when there is a match between at least two of said parameters of said second record of said first financial transaction received at said database and the same parameters of said first record of said first financial transaction stored in said database, and wherein any party to said payment clearing process is capable of verifying said parameters at each point along said financial transaction payment clearing process;

sending a notification to said payee bank participant with authorization to process said electronic financial transaction when said parameters match; and

sending a notification to said payee bank participant to not process said electronic

financial transaction when said parameters do not match.

### c.  The Asserted Claims Fail *Alice* Step 2

In *Alice* Step 2, we "consider the elements of each claim both individually and 'as an ordered combination' to determine whether the additional elements 'transform the nature of the claim' into a patent-eligible application," or, otherwise stated, whether the claim "contains an 'inventive concept' sufficient to 'transform' the claimed abstract idea into a patent-eligible application." *Alice Corp. Pty. Ltd. v. CLS Bank Int'l,* 573 U.S. 208, 218, 221 (2014).  Contrary to Kajeet's view in its Complaint, the search for an "inventive concept" is different than determining whether the claim was a technological advancement or differed from the prior art. *CardioNet, LLC v. InfoBionic, Inc*, ___F.3d___, 2020 WL 1897237 at *9 (Fed. Cir. 2020) ("the novelty or nonobviousness of the invention has little to no bearing on the question of what the claims are 'directed to'").

The asserted claims do not provide any inventive concept.  Kajeet argues in its Complaint that the asserted claims include an inventive concept because the claims require storing policies at a server remote from the computing device, which Kajeet argues is unconventional and improves operations.  (D.I. 1 ¶¶ 39, 55).  The assertion is wrong at two levels.

Preliminarily, Kajeet's argument applies only to Claim 27 of the '599 patent.  Kajeet's assertions must be disregarded as to Claim 27 of '438 patent, because in that claim, "a policy decider" and "policy enforcer" are simply "housed within a network device on the communication network."  The term "communication network" does not have any special meaning as it is not defined in the claim or in the specification.  Thus, according to the plain language of the claim, the "a policy decider" and "policy enforcer" need not be "remote," but can be on the computing device itself, which is part of the "communication network."  Any attempt by Kajeet to rewrite Claim 27 of '438 patent must be disregarded as contrary to law.  *Interval*

- 10 -

*Licensing LLC v. AOL, Inc*., 896 F.3d 1335, 1348 (Fed. Cir. 2018) (rejecting argument that a claim's "distributed architecture" supplied the inventive concept, because "none of the claims recite anything even akin to a distributed architecture").

Second, that the policies are stored at a server, rather than on a computing device, does not render the claim patentable. The decision to store the policies at the server rather than at the device is still an abstract idea. The claim still covers every conventional generic server and computing device, and the location of conventional generic policies on a conventional generic server. Storing policies on gateway servers in intranets has been an abstract idea being used at least two decades earlier than the date of claimed invention.

An apt case in point is *Customedia Techs., LLC v. Dish Network Corp*., 951 F.3d 1359, 1361 (Fed. Cir. 2020), which involved the following claim, which included a limitation that information was stored at "a remote account transaction server":

> A data delivery system for providing automatic delivery of multimedia data products from one or more multimedia data product providers, the system comprising:
>
> *a remote account transaction server for providing multimedia data products to an end user*, at least one of the multimedia data products being specifically identified advertising data; and
>
> a programmable *local receiver unit* for interfacing with the remote account transaction server to receive one or more of the multimedia data products and for processing and automatically recording the multimedia data products, said programmable local receiver unit including at least one individually controlled and reserved advertising data storage section adapted specifically for storing the specifically identified advertising data, said at least one advertising data storage section being monitored and controlled by said remote account transaction server and such that said specifically identified advertising data is delivered by said remote account transaction server and stored in said at least one individually controlled and reserved advertising data storage section.

The Court held that the claim failed *Alice* Step 2, because "[a]side from the abstract idea of delivering targeted advertising, the claims recite only generic computer components, including

a programmable receiver unit, a storage device, a remote server and a processor" and "[s]uch generic and functional hardware is insufficient to render eligible claims directed to an abstract idea." *Customedia Techs.*, 951 F.3d at 1366.

Even if Kajeet is correct that the storage location is unconventional, that limitation does not improve or in any way affect the server or the computing devices. In the absence of such a factor, the location of the policies remains just another abstract idea. Choosing the location of a policy database is a most basic choice that is made in any server – device situation. It is irrelevant that Kajeet's choice was "unconventional." *BSG Tech LLC v. Buyseasons, Inc.*, 899 F.3d 1281, 1291 (Fed. Cir. 2018) ("At *Alice* step two, it is irrelevant whether considering historical usage information while inputting data may have been non-routine or unconventional as a factual matter").

Nor is there any inventive concept in the ordered combination of the components or steps of the two patents. Both the components and steps are organized in a completely conventional way—a request is made, processed according to policies, and then access to a computing device is either granted or denied. The claims thus fail to describe a specific, discrete implementation of the abstract idea sufficient to qualify for eligibility under § 101.

Thus, both asserted claims remain nothing more than abstract ideas implemented on standard generic communication computers. The "inventive concept" for which Kajeet has argued in its brief is legally irrelevant. Both asserted claims are unpatentable.

### d.  All Claims of Both Patents Are Patent Ineligible

Representative Claims 27 of the '599 patent and the '438 patent have been shown to be patent ineligible. Kajeet's Complaint does not suggest that any of the other independent or dependent claims include any limitations that would further distinguish Alice or provide any new

argument for patent eligibility.  Thus, all claims of both asserted patents are unpatentable. *SAP Am., Inc. v. InvestPic, LLC*, 898 F.3d 1161, 1169-70 (Fed. Cir. 2018).

### III.  COUNTS I AND II MUST BE DISMISSED FOR FAILURE TO PLEAD PATENT MARKING

Claims 1-21 of the '559 patent are product claims.  In the Complaint, Kajeet has asserted infringement of "at least claim 27 of the '559 Patent, among others" and has alleged that Gryphon has infringed Claim 27 because Gryphon "makes, has made, uses, and sells the Accused Products."  (D.I. 1 ¶ 43).  Thus, Kajeet has asserted product claims against Gryphon, and the "other" asserted claims include product claims 1-21.  In short, Kajeet has alleged product claims against Gryphon.

Count II pleads infringement of Claim 27 of the '438 patent, which is a product claim.

Given that both Counts I and II plead infringement of product claims, any infringement allegation is constrained by the patent-marking statute, 35 U.S.C. § 287(a).  Specifically, patentees and their licensees are required to mark with the relevant patent number any product that they import, make, offer for sale, or sell, and:

> In the event of failure so to mark, no damages shall be recovered by the patentee in any action for infringement, except on proof that the infringer was notified of the infringement and continued to infringe thereafter, in which event damages may be recovered only for infringement occurring after such notice. Filing of an action for infringement shall constitute such notice.

35 U.S.C. § 287(a).

To comply with the *Iqbal/Twombly* pleading standard, the Plaintiff patentee must plead compliance with the patent marking statute in its complaint, and failure to do so requires dismissal of the claim:

> Defendants separately note that Plaintiff has failed to plead compliance with the marking statute. …. It is the patentee's burden to plead compliance with § 287(a). *Arctic Cat Inc. v. Bombardier Recreational Prod. Inc.*, 876 F.3d 1350, 1366 (Fed. Cir. 2017).  Plaintiff avers that there is no evidence that there was anything for it to mark but does not argue that it pled compliance. …. At the motion to dismiss

- 13 -

> stage, I am only concerned with the sufficiency of the claims. A claim for past damages requires pleading compliance with the marking statute—even when compliance is achieved, factually, by doing nothing at all. Thus, as Plaintiff has failed to state a claim for past damages, I will grant Defendants' motions.

*Express Mobile, Inc. v. DreamHost LLC*, 2019 WL 2514418 at *2 (D. Del. 2019).

The *Arctic Cat* decision by the Federal Circuit reference by Judge Andrews states unequivocally that a plaintiff patentee must plead compliance with the marking requirement: "The patentee bears the burden of pleading and proving he complied with § 287(a)'s marking requirement. . . . Whether a patentee's articles have been marked "is a matter peculiarly within his own knowledge." *Arctic Cat Inc., supra.*

Kajeet has not pled compliance with the patent marking statute, and, thus, *Express Mobile* requires that Counts I and II must be dismissed as a matter of law.

## IV. COUNTS I AND II FAIL TO PLAUSIBLY PLEAD DIRECT INFRINGEMENT

Claims 27 of both patents-in-suit are both lengthy and generic. Normally, *Iqbal/Twombly* require that the complaint "state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570, 127 S.Ct. 1955. In *Disc Disease Sols. Inc. v. VGH Sols., Inc.*, 888 F.3d 1256 (Fed. Cir. 2018), this plausibility standard was met by plaintiff's fairly bare-bone allegations because the "case involves a simple technology." *Id.* at 1260.

Claim 27 of the '438 Patent comprises almost undecipherable limitations such as "policy decider," "policy enforcer," "enforcing a decision by the policy decider" and "taking one or more actions consistent with the denied request or taking one or more actions consistent with the accepted request." Yet, neither the words "decider" and "enforcer" are not found anywhere in the patent's disclosure, and the claim terms "policy decider" and "policy enforcer" are certainly not disclosed in the patent. Nor is there any indication in the disclosure of what specifically is

encompassed by the indefinite and generic statement "taking one or more actions consistent with the denied request or taking one or more actions consistent with the accepted request."

Most importantly, Kajeet's Complaint quotes the "decider" and "enforcer" claim limitations, but never construes or interprets those claims, and never identifies where in Gryphon's system such limitations are arguably met.  Gryphon is not on notice of what Kajeet alleges to be the infringement in this case.

In view of the complex elements of the claims here, this is a case where the "technology is far from simple, and the . . . conclusory allegations in [the] complaint's [sic] do not provide fair notice of [the] infringement claims."  *SuperInterconnect Techs. LLC v. HP Inc.*, 2019 WL 6895877, at *2 fn. 3 (D. Del. 2019). As in *SuperInterconnect Techs.,* "[b]ecause [the] complaint does not show how [Gryphon] may infringe, it does not provide [Gryphon] with fair notice of the basis for [Kajeet's] direct infringement claims" and the direct infringement claims must be dismissed.  See also *Bos. Sci. Corp. v. Nevro Corp.*, 415 F. Supp. 3d 482, 490 (D. Del. 2019) ("In this case, the technology is far from simple and thus *Disc Disease* is inapposite. The voluminous exhibits attached to the First Amended Complaint do not provide fair notice of infringement by the accused products").

As to Claim 27 of the '559 patent, it is a method claim.  "To plead a cause of action for direct infringement of a method claim, the complaint must allege that the accused infringer 'perform[ed] all the steps of the claimed method, either personally or through another acting under his direction or control.'" *10x Genomics, Inc. v. Celsee, Inc.*, 2019 WL 5595666 at *11 (D. Del. 2019), *report and recommendation adopted*, 2019 WL 6037558 (D. Del. 2019) (quoting *Courtesy Prods. LLC v. Hamilton Beach Brands, Inc.*, 73 F. Supp. 3d 435, 439 (D. Del. 2014) (quoting *Akamai Techs., Inc. v. Limelight Networks, Inc.*, 692 F.3d 1301, 1307 (Fed. Cir.

- 15 -

2012))).   "A method claim is directly infringed only by one practicing the patented method."

*Linear Tech. Corp. v. Int'l Trade Comm'n*, 566 F.3d 1049, 1060–61 (Fed. Cir. 2009).  See also

*i4i Ltd. P'ship v. Microsoft Corp.*, 598 F.3d 831, 850 (Fed. Cir. 2010), aff'd, 564 U.S. 91 (2011).

It "is not enough to simply show that a product is capable of infringement; the patent owner must

show evidence of specific instances of direct infringement." *Fujitsu Ltd. v. Netgear Inc.*, 620

F.3d 1321, 1329 (Fed. Cir. 2010).  Sales of a product "alone cannot infringe the patent" and

infringement occurs "only when someone performs the method using" the product. *Lucent

Techs., Inc. v. Gateway, Inc.*, 580 F.3d 1301, 1317 (Fed. Cir. 2009).

Yet, Kajeet never asserts that Gryphon or anyone else has performed all the steps of

Claim 27.  The only potentially relevant pleading is ¶ 41, where Kajeet alleges:

> Gryphon … makes, has made, uses, and sells the Accused Products which
> practice the system and method claimed in at least claim 27 of the '559 Patent,
> among others.  In addition, Gryphon's quality testing and demonstrations of
> operation of the Accused Products to manage use of computing devices directly
> infringe, either literally or under the doctrine of equivalents, at least claim 27 of
> the '559 Patent.

But, "makes, has made, uses, and sells the Accused Products" does not plead infringement of a

method claim. *Ormco Corp. v. Align Tech., Inc.*, 463 F.3d 1299, 1311 (Fed. Cir. 2006) ("Method

claims are only infringed when the claimed process is performed, not by the sale of an apparatus

that is capable of infringing use").  The Count should be dismissed. *LoganTree LP v. Omron

Healthcare, Inc.*, 2019 WL 4538730 at *4 (D. Del. 2019) ("Regarding direct infringement,

because claim 20 is a method claim, a claim for direct infringement requires allegations that the

defendant has performed every claimed step of claim 20").

## V.   COUNTS I AND II FAIL TO PLAUSIBLY PLEAD INDIRECT INFRINGEMENT

"To state a claim of induced infringement that can survive a motion to dismiss, the

complaint must plead (1) an underlying act of direct infringement . . . (2) facts plausibly

supporting an inference that the defendant intended another to take the acts that are alleged to constitute infringement, and (3) facts plausibly supporting an inference that the defendant knew that the induced acts constituted infringement." *Wildcat Licensing WI LLC v. Faurecia S.A.*, 2019 WL 7067090 at *3 (D. Del. Dec. 23, 2019), *report and recommendation adopted*, 2020 WL 95481 (D. Del. 2020).

Both Counts II and III plead indirect infringement.  The indirect infringement claims must be dismissed for several alternative reasons.  First, "[t]here can be no indirect infringement without direct infringement." *Purohit v. Legend Pictures, LLC*, 2020 WL 1441614 at *5 (D. Del. 2020) (citing *Metro-Goldwyn-Mayer Studios Inc. v. Grokster, Ltd.*, 545 U.S. 913, 930 (2005)). There can be no contributory infringement if Kolcraft failed to show direct infringement. *Nalco Co. v. Chem-Mod, LLC*, 883 F.3d 1337, 1355 (Fed. Cir. 2018).  Kajeet has failed to sufficiently allege direct infringement by Gryphon, and, thus "Plaintiff does not state claims for contributory infringement or infringement based on vicarious liability." *Id.*

Second, both "induced infringement and contributory infringement require knowledge of the patent in suit and knowledge of patent infringement." *Bos. Sci. Corp. v. Nevro Corp.*, 415 F. Supp. 3d 482, 491 (D. Del. 2019) (quoting *Commil USA, LLC v. Cisco Sys., Inc.*, 575 U.S. 632 (2015)).  Here, Kajeet seeks damages for inducement to infringe and for contributory infringement during the period of time when inducement to infringe and contributory infringement were impossible, because there is no pleading that Gryphon knew about the patents at any time before the Complaint here was served on Gryphon.[1]

---

[1]  Thus, Count I ¶ 45 pleads damages based on inducement and contributory infringement without any restriction, and ¶ 61 makes the identical damage claim as to the '438 patent in Count II.  Similarly, Kajeet's prayer for relief does not differentiate damages.

- 17 -

Third, the inducement allegation as to Claim 27 of the '559 patent is unintelligible. Thus, Kajeet purports to plead inducement to infringe Claim 27 of the '559 patent in ¶ 42 of the Complaint.  But, that paragraph includes the statement "Gryphon has induced, caused, urged, encouraged, aided and abetted its direct and indirect customers to make, use, sell, offer for sale and/or import *one or more of the Accused Products*" and concludes with the statement "including the making, using, selling, offering for sale and/or importation of the *Accused Products* in the United States."  (italics supplied).  As noted previously, "making, using, selling, offering for sale and/or importation of the Accused Products" does not plead infringement of a method claim. *Ormco Corp*., *supra*; *LoganTree, supra.*

Fourth, both Counts I and II should be dismissed because Kajeet does not plead that Gryphon had knowledge of any infringement by its alleged customers.  *Tenaha Licensing LLC v. Vocera Commc'ns, Inc*., 2020 WL 30489 at *9 (D. Del. 2020); *Dodots Licensing Sols. LLC v. Lenovo Holding Co., Inc*., 2018 WL 6629709 at *4 (D. Del. 2018) ("[F]or Defendants' marketing activities to plausibly suggest a specific intent to induce infringement, there must be knowledge of the customers' infringement (which Plaintiff fails to adequately plead)"); *IP Commc'n Sols., LLC v. Viber Media (USA) Inc*., 2017 WL 1312942 at *4 (D. Del. 2017).

Fifth, although Kajeet has included typical boilerplate allegations that "Gryphon provides step-by-step instructions for installation, setup, and use of the Accused Products to infringe" (¶¶42, 58), Kajeet fails to give notice to Gryphon what it is about these instructions that results in infringement of the method claim.  *IP Commc'n Sols., LLC v. Viber Media (USA) Inc*., 2017 WL 1312942 at *4 (D. Del. 2017)  ("IPCS failed to adequately allege how Viber provided technical support services or detailed instructions promoting the use of the VoIP application and the server system in an infringing manner").

Finally, Kajeet's contributory infringement allegations as to Claim 27 of the '438 patent must be dismissed, because the only pleading cannot survive the plain language of 35 U.S.C. § 271(c).  That statute provides:

> (c)  Whoever offers to sell or sells within the United States or imports into the United States a component of a patented machine, manufacture, combination or composition, or a material or apparatus for use in practicing a patented process, constituting a material part of the invention, knowing the same to be especially made or especially adapted for use in an infringement of such patent, and not a staple article or commodity of commerce suitable for substantial noninfringing use, shall be liable as a contributory infringer.

Here, Kajeet accuses Gryphon of direct infringement by making, using and selling the "Accused Products."  Then, in ¶ 59, Kajeet asserts that the same Accused Products, which are accused of direct infringement, are somehow also liable for contributory infringement using language that has no relationship to reality, as they Accused Products, by definition, are not "components" and they cannot be a "material or apparatus for use in practicing a patented process" because Claim 27 of the '438 Patent is a product claim.

## **CONCLUSION**

On the basis of the foregoing analysis of fact and law, Gryphon respectfully requests that this Court dismiss Kajeet's Complaint under Fed. R. Civ. P. 12(b)(6).

Respectfully Submitted,

OF COUNSEL:

Sanjeev Kumar
Hunt Pennington Kumar & Dula PLLC
609 Castle Ridge Road, Suite 315
Austin, TX 78746
(512) 766-6082
skumar@hpkdlaw.com

*/s/ George Pazuniak*
George Pazuniak (No. 478)
O'Kelly & Ernst, LLC
824 N. Market Street, Suite 1001A
Wilmington, DE 19801
302-478-4230
gp@del-iplaw.com

*Counsel for Defendant*
*Gryphon Online Safety, Inc.*