## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

KAJEET, INC.,              §

                  §         **C.A. No. 19-cv-2370-MN**

       **Plaintiff,**    §

                  §

**v.**                      §         **JURY TRIAL DEMANDED**

                  §

**GRYPHON ONLINE SAFETY, INC.,**  §

                  §

     **Defendant.**    §

                  §

## PLAINTIFF'S BRIEF IN OPPOSITION
## TO DEFENDANT'S FRCP 12(B)(6) MOTION TO DISMISS

Dated: May 22, 2020

Brian E. Farnan (Bar No. 4089)
Michael J. Farnan (Bar No. 5165)
FARNAN LLP
919 North Market Street, 12th Floor
Wilmington, DE 19801
302-777-0300 Telephone
302-777-0301 Facsimile
bfarnan@farnanlaw.com
mfarnan@farnanlaw.com

Corby R. Vowell (admitted *pro hac vice*)
Richard A. Wojcio (admitted *pro hac vice*)
FRIEDMAN, SUDER & COOKE
604 East 4th Street, Suite 200
Fort Worth, TX 76102
817-334-0400
Fax: 817-334-0401
vowell@fsclaw.com
wojcio@fsclaw.com

*Attorneys for Plaintiff Kajeet, Inc.*

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ......................................................................... ii

I.      NATURE AND STAGE OF THE PROCEEDINGS ........................................1

II.     SUMMARY OF THE ARGUMENT ............................................................ 1

        A.      Patent Eligibility Under 35 U.S.C. § 101...........................................1

        B.      Sufficiency of Allegations for Direct and Indirect Infringement.........................2

        C.      Pleading Requirements for § 287(a)....................................................2

III.    STATEMENT OF FACTS .....................................................................3

        A.      Technology of the Patents-in-Suit.....................................................3

        B.      A Prior District Court Has Found the Claims Patent Eligible................................4

IV.     LEGAL STANDARDS ........................................................................6

        A.      Rule 12(b)(6) Standards...............................................................6

        B.      Patent Eligibility Under 35 U.S.C. §101 and *Alice* ....................................6

        C.      Sufficiency of Pleadings for Allegations of Patent Infringement.........................7

V.      ARGUMENT ..................................................................................7

        A.      The Asserted Claims are Directed to Patent Eligible Subject Matter....................7

                1.      Step One of the *Alice* Analysis ..............................................8

                2.      Step Two of the *Alice* Analysis.............................................12

                3.      Representative Claim Analysis is Inappropriate......................................15

        B.      Kajeet Sufficiently Plead Direct Infringement ........................................16

        C.      Kajeet Sufficiently Plead Indirect Infringement ......................................17

        D.      Kajeet's Causes of Action Should Not be Dismissed Based on § 287(a)..............19

VI.     CONCLUSION.................................................................................20

## <u>TABLE OF AUTHORITIES</u>

**<u>Cases:</u>**

*ActiveVideo Networks, Inc. v.* Verizon *Communs., Inc.,*
    694 F.3d 1312, 1334 (Fed. Cir. 2012)................................................................20

*Alice Corp. Pty. Ltd. v. CLS Bank Int'l,*
    573 U.S. 208 (2014)............................................................5, 6, 8, 10, 11, 12, 13, 14

*Ancora Techs,*
    908 F.3d 1343 (Fed. Cir. 2018)................................................................10, 11

*Ashcroft v. Iqbal,*
    556 U.S. 662 (2009)................................................................6, 7

*BASCOM Glob. Internet Servs. v. AT&T Mobility LLC,*
    827 F.3d 1341 (Fed. Cir. 2016)........................................................5, 12, 13, 14

*Cellspin Soft, Inc. v. Fitbit, Inc.,*
    927 F.3d 1306 (Fed. Cir. 2019)................................................................14

*Collabo Innovations, Inc. v. OmniVision Techs., Inc.,*
    2017 U.S. Dist. LEXIS 10199, at *22-24 ................................................................18

*Core Wireless Licensing S.A.R.L. v. LG Electronics, Inc,*
    880 F.3d 1356 (Fed. Cir. 2018)................................................................8

*Crown Packaging Tech., Inc. v. Reexam Bev. Can Co.,*
    559 F.3d 1308, 1386 (Fed. Cir. 2009)................................................................20

*Customedia Techs., LLC v. Dish Network Corp,*
    951 F.3d 1359 (Fed. Cir. 2020)................................................................14

*Deere & Co. v. AGCO Corp.,*
    2019 U.S. Dist. LEXIS 25885, *21-22 (D. Del. Feb. 19, 2019)........................................17

*Disc Disease Sols. Inc. v. VGH Sols., Inc.,*
    888 F.3d 1256 (Fed. Cir. 2018)................................................................7

*Enfish LLC v. Microsoft Corp,*
    822 F.3d 1327 (Fed. Cir. 2016)................................................................8, 11

ii

*Express Mobile, Inc. v. DreamHost LLC,*
    2019 U.S. Dist. LEXIS 101468, at *4-5 (D. Del. June 8, 2019)........................................20

*Fowler v. UPMC Shadyside,*
    578 F.3d 203 (3d Cir. 2009)....................................................................................6

*Finjan v. Blue Coat Sys.,*
    879 F.3d 1307 (Fed. Cir. 2016)...........................................................................8, 12

*Groove Digital, Inc. v. Jam City, Inc.,*
    2019 U.S. Dist. LEXIS 13563, at *9 (D. Del. Jan. 29, 2019)...........................................7

*Innovative Global Sys., LLC,*
    2020 U.S. Dist. LEXIS 50657 at *4-5 (D. Del. 2020)..................................................9, 10

*Jedi Techs., Inc. v. Spark Networks, Inc,*
    2017 U.S. Dist. LEXIS 122313 (D. Del. Aug. 3, 2017) ....................................................7

*Kajeet, Inc. v. Qustodio, LLC,*
    2019 U.S. Dist. LEXIS 228067 at *46-47 (C.D. Cal. November 1, 2019).........................
    1, 2, 4, 5, 6, 7, 12, 14

*LoganTree LP v. Omron Healthcare, Inc,*
    2019 U.D. Dist. LEXIS 159730 at *7-9 (D. Del. Sept. 19, 2019) ...............................7, 16

*Mayo Collaborative Servs. v. Prometheus Labs., Inc,*
    566 U.S. 66 (2012)............................................................................................8, 12

*McRO,*
    837 F.3d at 1316 ....................................................................................................15

*Thales Visionix, Inc. v. U.S.,*
    850 F.3d 1343 (Fed. Cir. 2017)....................................................................................8

*10x Genomics, Inc. v. Celsee, Inc.,*
    2019 U.S. Dist. LEXIS 188516, *4 (D. Del. Oct. 30, 2019) ...............................................6

*Ultramercial Inc. v. Hulu, Inc.,*
    772 F.3d at 709 (Fed. Cir. 2014)................................................................................12

*Visual Memory v. NVIDIA Corp,,*
    867 F.3d 1253 (Fed. Cir. 2017)....................................................................................8

*Waymark Corp. v. Porta Sys. Corp.,*
    245 F.3d 1364, 1367 (Fed. Cir. 2001)........................................................................17

**Other:**

35 U.S.C. §101 ...................................................................................1, 2, 4, 5, 6, 7, 12, 14

35 U.S.C. §271(a) .............................................................................................................17

35 U.S.C. §287(a) ..................................................................................................2, 19, 20

Fed. R. Civ. P. 12(b)(6)..............................................................................................1, 6, 8

## I.    NATURE AND STAGE OF THE PROCEEDINGS

Plaintiff Kajeet, Inc. ("Plaintiff" or "Kajeet") files this Response to Gryphon Online Safety, Inc.'s ("Defendant" or "Gryphon") Fed. R. Civ. P. 12(b)(6) Motion to Dismiss Kajeet's Complaint ("Motion"). For the following reasons, the Court should find the claims of the Patents-in-Suit[1] directed to patent eligible subject matter and that Kajeet has sufficiently plead direct and indirect infringement such that Defendant's Motion should be denied in its entirety.

## II.    SUMMARY OF THE ARGUMENT

### A.    Patent Eligibility Under 35 U.S.C. § 101

Defendant's primary argument for dismissing Kajeet's Complaint is its assertion that the claims of the Patents-in-suit are invalid under 35 U.S.C. § 101 for failure to claim patent eligible subject matter. Yet, Defendant completely ignores the detailed factual allegations in the Complaint, the testimony of Kajeet's expert, and, most egregiously, the recent opinion of another district court finding some of these exact same claims to be patent eligible subject matter.

Kajeet has litigated claims of the Patents-in-Suit in several other cases, resulting in favorable resolutions for Kajeet. On November 1, 2019, the district court in *Kajeet, Inc. v. Qustodio, LLC*  (the "Qustodio case") held that claim 27 of the '559 patent is directed to patent eligible subject matter and denied Qustodio's motion to dismiss. *See Exh. 2, Kajeet, Inc. v. Qustodio, LLC*, 2019 U.S. Dist. LEXIS 228067 at *46-47 (C.D. Cal. November 1, 2019). Kajeet specifically noted the *Qustodio* case and the testimony of its expert, Dr. Knutson, in the Complaint. D.I. 1, at p. 14, fn. 2. Defendant boldly files this Motion without even a mention of the prior court's ruling or its detailed analysis on the very issue it now brings to this Court. In its Motion, Defendant makes no attempt to distinguish its arguments regarding patent eligibility

---

[1] The Patents-in-Suit are  U.S. Patent Nos. 8,667,559 ("the '559 patent") and 7,899,438 ("the '438 patent").

from those discarded by the court in in the *Qustodio* case. Kajeet was deliberate and thorough in reciting all the factual allegations in its Complaint necessary to address the §101 issue such that this Court can reach the same conclusion as the district court in the prior case.

### B.    Sufficiency of Allegations for Direct and Indirect Infringement

Defendant also contends that Kajeet has not met the pleading standards for direct and indirect infringement. In direct conflict with this Court's holdings in other cases, Defendant would hold Plaintiff to a higher standard than is required at the pleadings stage where factual allegations must be taken as true. Kajeet's Complaint includes factual allegations identifying particular models of products that infringe claim 27 of the '559 patent and claim 27 of the '438 patent.  The Complaint also provides specific details about the operation of the accused products and how their structure and operation meets each and every element of the asserted claims of the Patents-in-Suit, Further, the Complaint provides comprehensive factual statements addressing each of the elements of indirect infringement, including the requisite knowledge component. The Complaint includes more than enough information to provide Defendant with "fair notice" of Kajeet's allegations of direct and indirect infringement of the asserted patents and claims.

### C.    Pleading Requirements for § 287(a)

Third, Defendant contends that Kajeet's Complaint should be dismissed for failure to allege compliance with the notice provision of 35 U.S.C. § 287(a). First, the marking requirements of § 287(a) do not apply to method claims like claim 27 of the '559 patent. And for both Patents-in-Suit, Kajeet's Complaint alleges entitlement to recover damages for past and future infringement. Even if Kajeet did not sufficiently plead compliance with the marking statute for purposes of recovering past damages, this alone is not sufficient to warrant dismissal of the entire cause of action including relief sought for infringement after actual notice.

2

III.   <u>**STATEMENT OF FACTS**</u>

A.   **Technology of the Patents-in-Suit**

Kajeet was founded in 2003 with the aim of developing solutions to an emerging technological problem - how to ensure safe operation of mobile communication devices by children and others. The known systems and methods for control prior to the time of invention were largely inadequate and relied upon removing access to the communication device to prevent disallowed usage or utilized policy-based controls in which the policies were stored locally within accessible portions of the device's memory. Policies are essentially rules that govern how and when users may utilize various functions of a mobile device. The prior systems were ineffective because the policies were locally accessible for manipulation or deletion and because each communication device to be controlled needed to be separately and independently configured. Kajeet addressed these shortcomings by storing usage policies remotely from the communication device(s). This arrangement improved operation of the systems through improved security from user manipulation while accommodating real-time control of one or more devices which could be grouped to apply a set of policies to each simultaneously.

Kajeet's efforts and ingenuity have yielded thirty-five U.S. Patents, many of which share a common specification to that of the asserted patents in this case. The Patents-in-Suit discuss how the proliferation of cell phones and other communication devices in modern life created the problem of providing adequate control over these devices, which typically accommodate a wide range of functionality accessible at any time from virtually anywhere.

Critically, the Patents-in-Suit note that prior art methods of controlling use of computing devices (*i.e.*, removing access by taking the device away or disabling it) were unworkable because they deprived the user of allowable uses of the device to prevent disallowed uses. The

3

patents make clear that the problem to be solved is how to maintain effective control to prohibit certain uses while still allowing approved uses, all in the context of the user possessing the device at all times even when apart from or not in contact with the parent/administrator.

Kajeet's inventions provide access to desirable features, such as always allowing for calls to a parent, for example, while also preventing access to features deemed inappropriate because of cost (e.g., downloadable games or other applications), type of content (e.g., gambling or pornographic content), the time of day or night (e.g., during school hours or after bed time), and/or the device's location, among other criteria. The Patents-in-Suit disclose the use of policies defining acceptable and unacceptable uses of a mobile communication device based on a variety of contexts which are set by administrators (e.g., parents or teachers) at the server level to control use of one or more mobile communication devices. This represented an unconventional scheme that was neither well known nor routine for addressing a newly emerging problem in society. The inventions disclosed and claimed in the Patents-in-Suit provided for more robust control that was more resilient to manipulation and/or disablement by users of the controlled devices and, therefore, more effective than prior art systems and methods.

### B.   A Prior District Court Has Found the Claims Patent Eligible

 In the *Qustodio* case, Kajeet alleged that the defendant infringed claims of three separate patents, including the '559 patent.[2] The defendant, Qustodio, filed its first motion to dismiss based on § 101 at the pleadings stage in lieu of an answer as Gryphon has done here. Kajeet opposed that motion and explained in its briefing and through an expert declaration from Dr. Knutson that the inventions in the asserted patents were directed to improvements in computer technology, and that these improvements constituted an inventive concept. The district court did

---

[2] In addition to the '559 patent, Kajeet asserted claims of U.S  Nos. 8,712,371 ("the '371 Patent"),  and 8,630,612 ("the '612 Patent") against the defendant, Qustodio, LLC.

not rule on the merits of the § 101 issue though it did grant the motion to dismiss allowing Kajeet to refile. The court concluded that, based on the arguments and expert declaration presented by Kajeet, there were factual determinations at both step 1 and 2 of the *Alice* inquiry that would be necessary to determine patent eligibility.[3] Exh. 1, at p. 8-9.

Kajeet amended its complaint in the *Qustodio* case to include express factual allegations based on the expert declaration provided by Dr. Knutson which Qustodio then moved to dismiss a second time. After substantial discovery had been conducted and claim construction had been briefed and argued, the district court issued an opinion in conjunction with its claim construction ruling denying Qustodio's motion with respect to claim 27 of the '559 patent. The district court left open the determination at step one of the *Alice* analysis of whether the claim was directed to an abstract idea. Focusing on step two of the *Alice* analysis and following the reasoning of the Federal Circuit in the *BASCOM*[4] case discussed at length *infra*, the court found:

> The new allegations of the [amended complaint] plausibly allege that this claim is at least drawn to a non-conventional arrangement of claim elements. This includes the requirement of the claim as to remote storage of policies on a server and the remote, realtime receipt and enforcement of decisions based on those policies through a communications network.

Exh. 2, *Qustodio*, 2019 U.S. Dist. LEXIS 228067 at *46-47.[5]

---

[3] Specifically, the court stated that: "judicial and party economy are best served by having Plaintiff file an amended pleading that includes express, factual allegations consistent with the patent intrinsic record that support its position under both steps of *Alice*." and that "It is not appropriate to make a determination regarding patent eligibility until after Plaintiff has had the opportunity to do so." Exh. 1, at p. 8.

[4] *See BASCOM Glob. Internet Servs. v. AT&T Mobility LLC*, 827 F.3d 1341 (Fed. Cir. 2016).

[5] The district court did find the claims of the '371 and '612 patents to be directed to ineligible subject matter because they did not embody the distributed architecture or remote storage of policies recited in claim 27 of the '559 patent.

The Complaint filed by Kajeet against Gryphon includes all of these same factual allegations regarding the improvements to computer technology and the inventive concepts that the district court relied on in *Qustodio* to deny the motion to dismiss. D.I. 1, at ¶¶ 35-39, 51-55. Kajeet also incorporated by reference the testimony from Dr. Knutson's declaration into the Complaint. The Complaint makes the same factual allegations for claim 27 of the '438 patent, which embodies the same inventive concept requiring the policies to be stored remotely from the user's device. *See* '438 patent, at claim 27 (where the policies are stored at a policy decider housed within a network device which is remote from the communication device of the user).

## IV. LEGAL STANDARDS

### A. Rule 12(b)(6) Standards

To survive a motion to dismiss under Rule 12, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The court must "construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009). A court's determination is not whether the non-moving party "will ultimately prevail," but whether that party is "entitled to offer evidence to support the claims." *10x Genomics, Inc. v. Celsee, Inc.*, 2019 U.S. Dist. LEXIS 188516, *4 (D. Del. Oct. 30, 2019). This "does not impose a probability requirement at the pleading stage," but "simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of [the necessary element]." *Id.*

### B. Patent Eligibility Under 35 U.S.C. § 101 and *Alice*

The Court is well-versed in the law surrounding patent eligibility under 35 U.S.C. § 101, including the two-part inquiry established by *Alice* and its progeny. *Alice Corp. Pty. Ltd. v. CLS*

*Bank Int'l,* 573 U.S. 208, 215 (2014).  With Section 101, "[a]t the motion to dismiss stage a patent claim can be found directed towards patent-ineligible subject matter if the only plausible reading of the patent must be that there is clear and convincing evidence of ineligibility."  *Jedi Techs., Inc. v. Spark Networks, Inc.*, 2017 U.S. Dist. LEXIS 122313 (D. Del. Aug. 3, 2017).

### C.      Sufficiency of Pleadings for Allegations of Patent Infringement

To satisfy the pleading standard in a patent case, "[s]pecific facts are not necessary." *Groove Digital, Inc. v. Jam City, Inc.*, 2019 U.S. Dist. LEXIS 13563, at *9 (D. Del. Jan. 29, 2019). For direct infringement, the Complaint need only give defendant "fair notice of what the [infringement] claim is and the ground upon which it rests." *Id.* The Federal Circuit has held that a complaint listing the asserted patents, specifically identifying accused products, and alleging that the accused products meet each and every element of at least one claim, is sufficient to meet the pleadings requirements under the plausibility standard of *Iqbal/Twombly*.  *Disc Disease Sols. Inc. v. VGH Sols., Inc.*, 888 F.3d 1256, 1260 (Fed. Cir. 2018). This Court has followed the Federal Circuit's guidance in *Disc Disease* in denying a motion challenging sufficiency of pleadings for direct infringement. *LoganTree LP v. Omron Healthcare, Inc.*, 2019 U.S. Dist. LEXIS 159730 at *7-9 (D. Del. Sept. 19, 2019).

## V.      ARGUMENT

### A.      The Asserted Claims are Directed to Patent Eligible Subject Matter

Gryphon's Motion argues that the asserted claims are ineligible subject matter, yet Gryphon never even identifies any abstract idea it believes is encompassed by the claims. One court has already found Kajeet's arguments persuasive declining to invalidate claim 27 of the '559 in a § 101 challenge. *See Qustodio, LLC*, 2019 U.S. Dist. LEXIS 228067 at *46-47. The Complaint recites specific factual allegations regarding the technology disclosed in the Patents-

in-Suit, how the patented inventions describe improvements in computer technology, and how the inventions include an inventive step. What makes Defendant's position more tenuous is that it filed its motion under Rule 12(b)(6) which requires that all allegations in the Complaint, including Plaintiff's explanation of the invention, be taken as true.

Each allegation is further supported and reinforced by the opinions of Kajeet's expert, Dr. Knutson, whose declaration[6] was incorporated by reference in the Complaint and is attached as Exhibit 2. *See* D.I. No. 1, at ¶ 39, fn. 2. Dr. Knutson's testimony is uncontested, and Defendant's Motion provides no evidence of the understanding of one of ordinary skill in the art on this issue. Gryphon's assertions in its Motion constitute nothing more than unsubstantiated argument because there is absolutely no evidence in the record supporting any of its positions.

### 1. Step One of the *Alice* Analysis

"[A]ll inventions at some level embody, use, reflect, rest upon, or apply laws of nature, natural phenomena, or abstract ideas." *Mayo Collaborative Servs. v. Prometheus Labs., Inc.*, 566 U.S. 66, 71 (2012). "We must therefore ensure at step one that we articulate what the claims are directed to with enough specificity to ensure the step one inquiry is meaningful." *Thales Visionix, Inc. v. U.S.*, 850 F.3d 1343, 1347 (Fed. Cir. 2017) (citing to *Alice*, 573 U.S. at 217). Claims directed to specific improvements in computing systems are patent eligible, ending the inquiry at the first step. *See, e.g., Enfish LLC v. Microsoft Corp.*, 822 F.3d 1327, 1337 (Fed. Cir. 2016).[7]

Step one initially requires identification of a patent ineligible concept underlying the

---

[6] Dr. Knutson's declaration specifically addresses claim 27 of the '559 patent, and the analysis set forth therein is equally applicable to claim 27 of the '438 patent.

[7] *See also Visual Memory v. NVIDIA Corp*, 867 F.3d 1253, 1258 (Fed. Cir. 2017); *Finjan v. Blue Coat Sys.*, 879 F.3d 1307, 1304 (Fed. Cir. 2016); *Core Wireless Licensing S.A.R.L. v. LG Electronics, Inc.*, 880 F.3d 1356, 1361 (Fed. Cir. 2018).

claim (so that one may then determine the subject matter to which the claim is directed). *Innovative Global Sys., LLC,* 2020 U.S. Dist. LEXIS 50657 at *4-5 (D. Del. 2020). Yet Gryphon has not bothered to identify the supposedly ineligible concept. At most it states that the claims merely involve generic, routine components of a computer network (D.I. 12 at 5-6) – but that is not the same thing as identifying the purported concept underlying the claim. Thus, the Court can summarily reject Gryphon's argument for that reason alone.

Regardless, the claims are nonetheless directed to more than an abstract concept. Instead, each: (1) is rooted in computing and network technology; (2) represents improvements in the security and effectiveness in how systems implementing policy-based control over communication devices operate; and, (3) are directed to specific implementations of such improved systems such that there is no risk of preemption.

Claims directed to specific implementations and improvements in operation of computer systems have been consistently found patent eligible. This Court's *Innovative Global Systems* opinion is instructive. There the Court found that the claim was not merely directed to driver and vehicle operation logging and reporting, but rather a particular onboard system for a vehicle that continuously monitors certain data from a vehicle data bus and generates a log indicating driver compliance. *Innovative Global Sys., LLC,* 2020 U.S. Dist. LEXIS 50657 at *14. Similarly, here the asserted claims of the '559 and '438 patents are addressed to a specific configuration and implementation of certain software and hardware network components to effectuate policy based control of network devices (e.g. communications from and to the device); namely, specific solutions in which the policies applied are stored remotely and are, therefore, inaccessible by the controlled device. *Id.* Remote policy storage is required by the express limitations of the challenged claims. D.I. 1 at ¶¶ 36, 52; Exh. 3, at ¶ 22. These limitations capture the distributed

9

architecture scheme resulting in improved effectiveness of the claimed systems. *Id.* The distributed arrangement advantageously accommodates policy application in real-time with device usage while preventing the user of the controlled device from accessing and manipulating the policies.  D.I. 1 at ¶¶ 35-36; Exh. 3, at ¶¶ 20, 24.

Thus, the claimed subject matter, when considered as a whole, recites more than the mere use of generic computer functionality, and provides an improvement to a technical field, meeting the guidelines for non-abstract subject matter under *Alice*.  D.I. 1 at ¶¶ 36-38, 52-54; Exh. 3, at ¶¶ 20, 22.  Kajeet's Complaint captures this concept and these well pleaded factual allegations must be taken as true for the purposes of deciding the present Motion. *Ashcroft*, 556 U.S. at 678. And, as in *Innovative Global Systems*, the limitations of the claims preclude any preemption of the entire field of policy-based controls, distributed architecture networks, or the like. *Innovative Global Sys., LLC,* 2020 U.S. Dist. LEXIS 50657 at *15.

Moreover, the asserted claims are addressed to the precise type of improvement identified by the Federal Circuit in a recent case conferring patent eligibility. *Ancora Techs.*, 908 F.3d 1343, 1344 (Fed. Cir. 2018).  In *Ancora Techs.*, the Federal Circuit held that claims directed to a software-based scheme for controlling access to features are patent eligible because the embodiments claimed comprised "concrete assignment of specified functions among a computer's components ***to improve computer security***."  *Id*. (emphasis added). The Federal Circuit noted that "[i]mproving security – here, against a computer's unauthorized use of a program – can be a non-abstract computer-functionality improvement if done by a specific technique that departs from earlier approaches to solve a specific computer problem."  *Id*. at 1348.  The improved security resulted from disposing license credentials in a different portion of a computer's memory whereby they would be less vulnerable to manipulation.  *Id*. at 1348-49.

*Ancora Techs.* follows a line of Federal Circuit cases applying the holding of *Enfish* to find patent eligibility at step one of *Alice.*  In *Enfish*, the Federal Circuit found claims directed to a self-referential logical model for a computer database as directed to patent eligible subject matter at step one. *Enfish*, 822 F.3d at 1337. The Court noted that the invention represented improvements over conventional computer databases resulting in increased flexibility, faster search times, and smaller memory requirements. *Id.* at 1337. The challenged claims were deemed "not simply directed to *any* form of storing tabular data, but instead [were] specifically directed to a *self-referential* table for a computer database" so that they functioned differently and better than conventional databases.  *Id.* Importantly, the Court reasoned that "software can make non-abstract improvements to computer technology just as hardware improvements can… Therefore, we find it relevant to ask whether the claims are directed to an improvement in computer functionality versus being directed to an abstract idea, even at the first step of the *Alice* analysis."[8] *Id.* at 1335.

Similarly, in *Visual Memory*, the Federal Circuit reversed a district court holding which found the challenged claims directed to ineligible subject matter, citing favorably to its prior decision in *Enfish*. *Visual Memory*, 867 F.3d at 1258-59. The challenged claims were directed to the use of conventional memory components within a computer and purported to improve upon existing memory hierarchical structures through implementation of a "programmable operational characteristic" which, effectively, tailored the allocation scheme of data to be stored based upon characteristics of a processor. The Federal Circuit disagreed with the district court's conclusion

---

[8] The court cautioned against "oversimplifying" computer-related inventions noting that "[m]uch of the advancement made in computer technology consists of improvements to software that, by their very nature, may not be defined by particular physical features but rather by logical structures and processes." *Enfish*, 822 F.3d at 1337-8.

that the claims were directed to the "abstract idea of categorical data storage" instead concluding the claims were directed to "an improved computer memory system." *Id.* at 1257, 1259.[9]

### 2.   Step Two of the *Alice* Analysis

Even if the claims of the Patents-in-Suit were directed to an abstract idea, they still introduce an inventive concept embodied in an unconventional arrangement of components as prescribed by the Federal Circuit. *See BASCOM* 827 F.3d at 1343. The claims here describe a distributed architecture with policies stored remotely from the device being managed – an arrangement that was not known or routine at the time. D.I. 1, at ¶¶ 36, 52. The district court in the *Qustodio* case agreed and followed the reasoning of the *BASCOM* case to deny the motion to dismiss on § 101 grounds. *Qustodio, LLC*, 2019 U.S. Dist. LEXIS 228067 at *46-47.

For claims directed to a judicial exception under step one, courts are to "consider the elements of each claim both individually and 'as an ordered combination' to determine whether the additional elements 'transform the nature of the claim' into a patent-eligible application." *Finjan*, 879 F.3d at 1303 (quoting *Mayo*, 566 U.S. at 67). The "inventive concept" must be something sufficient to ensure that the claims amount to "significantly more" than the abstract idea itself. *Id.* (quoting *Mayo*, 566 U.S. at 72-73).  To satisfy this prong, the claims must include additional features which are significantly beyond "well understood, routine, conventional activity" or a simple "instruction to implement or apply the abstract idea on a computer." *Ultramercial Inc. v. Hulu, Inc.,* 772 F.3d at 709, 715 (Fed. Cir. 2014) (quoting *Mayo,* 566 U.S. at 79); *BASCOM,* 827 F.3d at 1349.

---

[9] The court relied on statements in the specification explaining the benefits of the memory structures claimed therein, such as "obviate[ing] the need to design a separate memory system for each type of processor, which proved to be costly and inefficient, and, at the same time, avoid the performance problems of prior art memory systems." *Visual Memory*, 867 F.3d at 1259.

Kajeet's Complaint incorporates the declaration of Dr. Knutson discussing the onset of the problem addressed by the Patents-in-Suit, prior art systems and methods for addressing it, and Kajeet's claimed solutions as expert evidentiary support for the well-pleaded factual allegations in the Complaint. *See* Exh. 3, at ¶¶ 16-22. The component arrangement required by the challenged claims, combined with remote policy storage in the context of feature management of a computing device, was not well-known, routine, or conventional and, further, its use effected an improvement in the operation of mobile communication device control systems.  D.I. 1 at ¶¶ 36-39, 52-55; Exh. 3, at ¶¶ 29-30.

As described above and verified by Dr. Knutson, the claims of the Patents-in-Suit are directed to solving a problem arising from the rapid proliferation of mobile communications devices throughout society - a problem rooted in technology that requires a likewise technological solution.  D.I. 1 at ¶¶ 12-17, 35-36, 51-53; Exh. 3, at ¶¶ 19-20.  Means for preventing excessive or inappropriate use of such communication devices, which remain in the possession of children potentially all day and night, were needed. *Id*. The claimed inventions address this technology-centric by improving the security, effectiveness, and robustness of management of mobile devices.  D.I. 1 at ¶¶ 38, 54; Exh. 3, at ¶ 24.

In the *BASCOM* case, the Federal Circuit reasoned that while "the limitations of the claims, taken individually, recite generic computer, network and Internet components, none of which is inventive by itself… an inventive concept can be found in the non-conventional and non-generic arrangement of known, conventional pieces."  *BASCOM*, 827 F.3d at 1349-50.  The Court held the claims at issue were directed to patentable subject matter at *Alice* step two because the record established that "the installation of a filtering tool at a specific location, **remote from the end-users**… cannot be said, as a matter of law, to have been conventional or

generic." *Id.* at 1350 (emphasis added). The literal language of the respective claims at issue in *BASCOM* described the remote location as "a remote ISP server" and as "[a]n ISP server… at a remote client computer." *Id.*, 827 F.3d 1345-46.

Here, the challenged claims similarly require that the policies be stored remotely from the controlled device and with no less specificity than that provided in the claims of *BASCOM*. Further, the holding of *BASCOM* that the unconventional arrangement claimed was not well-understood, routine, or conventional at that time belies Defendant's assertion to the contrary. The court in the *Qustodio* case followed the *BASCOM* analysis of the Federal Circuit and agreed that the factual allegations as set forth in the Complaint and in Dr. Knutson's declaration regarding the "inventive concept" of the asserted claims defeated the *Alice* challenge. *Qustodio, LLC*, 2019 U.S. Dist. LEXIS 228067 at *46.[10]

Defendant cites to the *Customedia* case for its proposition that the remote storage of polices here cannot be an inventive concept. However, in *Customedia*, there was no evidence or even an argument that the claims were directed to an unconventional arrangement of previously known components, including the recited remote account transaction server. Simply put, a remote server was never asserted as the basis to defeat the § 101 defense. There, the plaintiff could only point to a different subject matter -- the addition of a programmable receiver to dedicate a section of storage for storing only "specifically identified advertising data," which the court concluded was already available and not an inventive concept. *Customedia Techs., LLC v. Dish Network Corp.*, 951 F.3d 1359, 1366 (Fed. Cir. 2020),

---

[10] *See also Cellspin Soft, Inc. v. Fitbit, Inc.*, 927 F.3d 1306, 1317 (Fed. Cir. 2019) (holding "plausible and specific factual allegations that aspects of the claims are inventive are sufficient" to deny a motion to dismiss).

14

In a separate argument related only to claim 27 of the '438 patent, Gryphon contends that the concept of "remote storage" of policies is not captured by the language of that claim and that Kajeet's arguments regarding the inventive concept, therefore, do not apply. D.I. 12 at 10-11. However, the plain language of the claim requires the storage of the policies remotely from the device being managed even though it does not specifically use the word "remote" or "remotely".

Claim 27 of the '438 patent recites a "communication device" (the device being managed) and a separate "network device" which houses the policy decider and stores the policies. The terms "communication device" and "network device" must refer to two separate devices on the network that are, by definition, remote from each other. The context of the claim is clear that the computing device sends and receives information over a communication network and that the network device is also on the communication network. There can be no doubt that the network device of claim 27 of the '438 patent on which the policies are stored is located remotely from the communication device that it manages.

### 3.    Representative Claim Analysis is Inappropriate

Defendant's arguments address only claim 27 of the '559 patent and claim 27 of the '438 patent, which it claims without any analysis are representative of all other claims in the Patents-in-Suit. D.I. 12 at 12-13. Representative claim analysis is inappropriate because the remaining independent[11] and dependent[12] claims of each patent include additional, different limitations which are directed to specific, alternative embodiments having differing claim scope.

---

[11] For instance, limitations directed to: routine updating of policies from a server during use (*See* claims 13 and 22 of the '559 patent) and a geographic location device capable of determining the physical location of the device (*See* claim 30 of the '438 patent).

[12] The dependent claims here include further limitations, such as defining the type, character, and content of rules or policies applied within the claimed systems, which have been found in other cases to be critical to the patent eligibility analysis *See McRO,* 837 F.3d at 1316.

### B.     Kajeet Sufficiently Plead Direct Infringement

For the reasons set forth in this Court's opinion in the *LoganTree* case, Kajeet's Complaint includes sufficient allegations that Defendant's accused products meet each and every element of the asserted claims of the Patents-in-Suit. *LoganTree LP v. Omron Healthcare, Inc.*, 2019 U.S. Dist. LEXIS 159730 at *7-8 (D. Del. Sept. 19, 2019). The Complaint clearly identifies the asserted patents and asserted claims.[13] The Accused Products of Gryphon are also identified very clearly in the Complaint.   D.I. 1, at ¶ 21. Also included in the Complaint is a detailed explanation of the patented technology and the elements of the asserted claims. D.I. 1, at ¶¶ 11-19, 35-39, 51-55.

Kajeet's Complaint provides a thorough description of the structure and operation of the accused products that meet each limitation of the asserted claims. D.I. 1, at ¶¶ 20-30. Gryphon's accused router products are network appliances configured to effect policy-based control over end user communication devices such as laptops, tablets, and smartphones.[14] *Id.*, at ¶ 22. The Complaint describes that when the managed user devices initiate a function on the device to communicate over the network, the Gryphon router detects this attempted use and formats a usage request for comparison to applicable usage policies to determine whether the use should be allowed or prohibited. D.I. 1, at ¶ 27. Policy decisions are made in real time in response to requests by the Gryphon router. *Id.* Data indicative of decisions whether to allow or deny such requests are communicated back to the router and/or the managed device. Decisions are enforced

---

[13] Claim 27 of the '559 patent and claim 27 of the '438 patent. D.I. 1, at ¶¶ 22, 41, 48, 57.

[14] The Complaint describes how usage policies may be set up by an administrator or parent, may be content-based or time-based to control use of one or more communications devices to which they are associated, and are stored remotely on the Gryphon routers. *Id.*, at ¶ 23.

via permitting or blocking execution of the requested function or communication. *Id.* This description is sufficient to show how the Accused Products meet the limitations of the claim

Gryphon also argues that Kajeet has not sufficiently plead direct infringement by Gryphon with respect to claim 27 of the '559 patent which is a method claim. In addition to explaining in detail how Gryphon's products function to practice each of the limitations of the method, Kajeet specifically alleges that Defendant directly infringes by operating its products in an infringing manner and, thereby, <u>using</u> the patented method. D.I. 1, at ¶ 41. The Complaint includes express allegations of Gryphon's use of the method of claim 27 by 1) quality testing of the accused products, and 2) demonstrations of operation of the accused products.[15] *Id.*

### C.    Kajeet Sufficiently Plead Indirect Infringement

In a very conclusory fashion, Defendant raises several brief arguments for its assertion that Kajeet has not sufficiently pled indirect infringement, essentially taking a "kitchen sink" approach. However, in its Complaint, Kajeet pled specific factual allegations that Defendant has both induced and contributed to infringement of the asserted claims.[16] First, Defendant contends that Kajeet's indirect infringement allegations should be dismissed based on Defendant's position that Kajeet did not adequately plead the requisite acts of direct infringement.[17] For the

---

[15] The Federal Circuit has long held that testing is a use of an invention which can give rise to liability for direct infringement under 35 U.S.C. § 271(a). *Waymark Corp. v. Porta Sys. Corp.*, 245 F.3d 1364, 1367 (Fed. Cir. 2001).

[16] *See Deere & Co. v. AGCO Corp.*, 2019 U.S. Dist. LEXIS 25885, *21-22 (D. Del. Feb. 19, 2019) ("Evidence of active steps … taken to encourage direct infringement, such as advertising an infringing use or instructing how to engage in an infringing use, show[s] an affirmative intent that the product be used to infringe, and a showing that infringement was encouraged overcomes the law's reluctance to find liability when a defendant merely sells a commercial product suitable for some lawful use.").

[17] For Kajeet's allegations of indirect infringement, the requisite act of direct infringement should be based on the actions of a third party, such as a customer, rather than the acts of Defendant as suggested in its Motion. D.I. 12 at 17.

17

reasons set forth in section V(B) above, Kajeet has provided more than enough detail in its Complaint to allege that use of the Accused Products constitutes direct infringement. Kajeet has alleged that Defendant's end users and customers use the patented method and apparatus and are direct infringers. D.I. 1, at ¶¶ 42, 43, 58, 59.

Defendant's second argument is that Kajeet has not adequately pled the knowledge requirement because it did not plead knowledge of the patents or infringement allegations prior to the filing of the Complaint. D.I. 12 at 17. To be clear, Kajeet alleges that Defendant has had knowledge of the patents and infringement allegations "since at least the filing of the complaint", which courts in this District have held is sufficient to plead a claim for indirect infringement.[18]

Third, Defendant argues that Kajeet has not sufficiently pled that Defendant induces infringement of claim 27 of the '559 which is a method claim. Yet paragraph 42 of the Complaint could not make this point any clearer, stating: "A customer's use of the Accused Products to manage computing devices in the manners described above infringes at least claim 27 of the '559 Patent." D.I. 1, at ¶ 42. Kajeet addressed in section V(B) above how the "use" of an Accused Product in an infringing manner constitutes direct infringement of a method claim. Here, the customer or end user's use of the Accused Products would constitute the requisite act of direct infringement for the allegation of indirect infringement against Defendant.

Defendant's fourth argument is that Kajeet has not adequately pled induced infringement because it purportedly failed to allege that Defendant had knowledge of its customer's or end user's direct infringement. While Defendant's position on this conclusory argument is not entirely clear, Kajeet unmistakably alleged that Defendant knew of the requisite acts of direct

---

[18] D.I. 1, at ¶¶ 46. 62, *see also Collabo Innovations, Inc. v. OmniVision Techs., Inc.*, 2017 U.S. Dist. LEXIS 10199, at *22-24 (recognizing an earlier split of authority in this District but concluding that pleading knowledge as of the filing of the complaint is sufficient).

infringement by its customers. Specifically, in paragraphs 42 and 58, Kajeet stated that "Such conduct by Gryphon was intended to **and actually did result in** direct infringement by Gryphon's direct and indirect customers." D.I. 1, at ¶¶ 42, 58. (emphasis added).

Fifth, Defendant contends that Kajeet did not adequately plead how Defendant induces its customers to directly infringe the asserted claims. Kajeet's Complaint includes specific allegations that Defendant provides user manuals and online content to its customers with step-by-step instructions to install, set up, and use the Accused Products in an infringing manner. D.I. 1, at ¶¶ 42, 58. In its Complaint, Kajeet states that the Accused Products are "marketed toward infringing use by Gryphon's customers." *Id.* Kajeet's complaint clearly alleges that Defendant instructs its customers to use the Accused Products in an infringing manner.

Sixth, Defendant contends Kajeet has not sufficiently pled contributory infringement of claim 27 of the '438 patent. Kajeet alleges that the Accused Products sold by Defendant "are especially designed for controlling use of computing devices in the manner described" earlier in the Complaint (paragraphs 20-30). D.I. 1, at ¶ 59. Kajeet also alleges that the customer's use of the Accused Products in the manner described constitutes direct infringement by the customer. *Id.* The Complaint further states that "the Accused Products have no substantial noninfringing use, as they are specifically designed and marketed for use by parents, teachers, and supervisors to control use of a computing device operating on a communication network". Consequently, Kajeet has sufficiently pled both the underlying act of direct infringement by the customer as well as actions of Defendant that constitute contributory infringement.

### D.    Kajeet's Causes of Action Should Not be Dismissed Based on § 287 (a)

Finally, Gryphon seeks dismissal of Kajeet's claims contending that it did not plead compliance with the notice provisions of § 287 (a), referred to as the marking statute. Even if the Marking statute is applicable, Kajeet has complied with its requirements, is entitled to past

damages on that basis, and plead that it is entitled to recover past damages. D.I. 1, at ¶¶ 33-49. These reasons alone are sufficient to deny this portion of the Motion to Dismiss.

In addition, with respect to the '559 patent, Kajeet only alleges infringement of claim 27 which is a method claim. D.I. 1, at ¶¶ 41-43. The law is well settled that the notice provisions of § 287 (a) do not apply where the patent is directed to a process or method and the Court should also deny Gryphon's Motion on this basis.[19] Likewise, the Court should deny Gryphon's Motion because it requests dismissal of Kajeet's causes of action for infringement as a whole, and not just a dismissal of a claim for past damages.[20]

## VI. <u>CONCLUSION</u>

For the reasons set forth above, Defendant's Motion should be denied in its entirety.

---

[19] *See ActiveVideo Networks, Inc. v.* Verizon *Communs., Inc.,* 694 F.3d 1312, 1334 (Fed. Cir. 2012). In cases where a patent includes both apparatus and method claims but <u>only</u> method claims are asserted (as is the case here), the Federal Circuit has held that of § 287 (a) does not apply. *Crown Packaging Tech., Inc. v. Reexam Bev. Can Co.,* 559 F.3d 1308, 1386 (Fed. Cir. 2009). The Court should deny the Given that Kajeet only asserted infringement of a method claim of the '559, the Court should deny Gryphon's Motion with respect to the '559 patent.

[20] Kajeet's infringement claims are <u>not</u> merely claims for past damages. Kajeet is also entitled to damages from the time it provided actual notice of its infringement allegations to Gryphon which is at least as early as of the filing of the Complaint.[20] D.I. 1, at ¶ 62. Kajeet would be entitled to recover damages going forward from the time of the Complaint through the time of trial as well as ongoing royalty or other compensation for infringement through the life of the patent. *Id.* In the case that Gryphon cites in support of its Motion, the court did not address the cause of action for infringement as a whole but, instead, only dismissed the plaintiff's claim "to the extent that they [sought] past damages." *Express Mobile, Inc. v. DreamHost LLC*, 2019 U.S. Dist. LEXIS 101468, at *4-5 (D. Del. June 8, 2019). Gryphon's Motion seeks dismissal of Kajeet's infringement claims outright -- not just for past damages. Gryphon has cited no authority for such a proposition, and dismissal of the cause of action as a whole is unwarranted.

Dated: May 22, 2020

Respectfully submitted,

FARNAN LLP

/s/ Michael J. Farnan
Brian E. Farnan (Bar No. 4089)
Michael J. Farnan (Bar No. 5165)
919 North Market Street, 12th Floor
Wilmington, DE 19801
302-777-0300 Telephone
302-777-0301 Facsimile
bfarnan@farnanlaw.com
mfarnan@farnanlaw.com

Corby R. Vowell (admitted *pro hac vice*)
Richard A. Wojcio (admitted *pro hac vice*)
FRIEDMAN, SUDER & COOKE
604 East 4th Street, Suite 200
Fort Worth, TX 76102
817-334-0400
Fax: 817-334-0401
vowell@fsclaw.com
wojcio@fsclaw.com

*Attorneys for Plaintiff Kajeet, Inc.*