IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| KAJEET, INC.,<br><br>   Plaintiff,<br><br>   v.<br><br>GRYPHON ONLINE SAFETY, INC.,<br><br>   Defendant. | )<br>)<br>)<br>)<br>) C.A. No. 19-2370 (MN)<br>)<br>)<br>)<br>)<br>) |
| KAJEET, INC.,<br><br>   Plaintiff,<br><br>   v.<br><br>NORTONLIFELOCK INC.,<br><br>   Defendant. | )<br>)<br>)<br>)<br>) C.A. No. 20-1339 (MN)<br>)<br>)<br>)<br>)<br>) |

**<u>MEMORANDUM ORDER</u>**

At Wilmington this 1st day of March 2021:

As announced at the hearing on February 23, 2021, IT IS HEREBY ORDERED that:

1. Gryphon Online Safety, Inc.'s ("Gryphon") Motion to Dismiss for Failure to State a Claim (D.I. 11 in C.A. No. 19-2370) is GRANTED-IN-PART and DENIED-IN-PART; and

2. NortonLifeLock Inc.'s ("Norton") Motion to Dismiss for Failure to State a Claim (D.I. 12 in C.A. No. 20-1339) is DENIED.

Defendants moved to dismiss the complaints in each of their actions pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, alleging that the claims of U.S. Patent No. 8,667,559 ("the '559 Patent") are invalid as claiming ineligible subject matter under 35 U.S.C. § 101. In its motion, Gryphon also alleges that the claims of U.S. Patent No. 7,899,438 ("the '438

Patent")[1] are directed to ineligible subject matter under § 101 and, further, Gryphon seeks dismissal of Plaintiff's allegations of direct and indirect infringement under Rule 12(b)(6) as insufficiently pled under *Iqbal / Twombly*.  Defendants' motions were fully briefed as of January 13, 2021,[2] and the Court received further submissions in both cases regarding which Supreme Court or Federal Circuit case each party contends is analogous to the claims at issue in Defendants' motions as related to the § 101 arguments.  (*See* D.I. 30, 31 & 32 in C.A. No. 19-2370).  The Court carefully reviewed all submissions in connection with Defendants' motions, heard oral argument[3] and applied the following legal standard in reaching its decision:

I.   **LEGAL STANDARDS**

   A.   <u>Motion to Dismiss for Failure to State a Claim</u>

   In ruling on a motion to dismiss pursuant to Rule 12(b)(6), the Court must accept all well-pleaded factual allegations in the complaint as true and view them in the light most favorable to the plaintiff.  *See Mayer v. Belichick*, 605 F.3d 223, 229 (3d Cir. 2010); *see also Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 232-33 (3d Cir. 2008).  "[A] court need not 'accept as true allegations that contradict matters properly subject to judicial notice or by exhibit,' such as the claims and the patent specification."  *Secured Mail Sols. LLC v. Universal Wilde, Inc.*, 873 F.3d 905, 913 (Fed. Cir. 2017) (quoting *Anderson v. Kimberly-Clark Corp.*, 570 F. App'x 927, 931 (Fed. Cir. 2014)).  Dismissal under Rule 12(b)(6) is only appropriate if a complaint does not contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007));

---

[1]   The '438 Patent is not asserted against Norton.

[2]   (*See* D.I. 11, 12, 13, 14 & 16 in C.A. No. 19-2370; *see also* D.I. 12, 13, 14, 19 & 22 in C.A. No. 20-1339).

[3]   (*See* D.I. 35 in C.A. 19-2370; D.I. 32 in C.A. No. 20-1339).

*see also Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009). "[P]atent eligibility can be determined at the Rule 12(b)(6) stage . . . when there are no factual allegations that, taken as true, prevent resolving the eligibility question as a matter of law." *Aatrix Software, Inc. v. Green Shades Software, Inc.*, 882 F.3d 1121, 1125 (Fed. Cir. 2018).

B.    Patent-Eligible Subject Matter

Section 101 of the Patent Act provides that anyone who "invents or discovers any new and useful process, machine, manufacture, or composition of matter, or any new and useful improvement thereof" may obtain a patent. 35 U.S.C. § 101. The Supreme Court has recognized three exceptions to the broad categories of subject matter eligible for patenting under § 101: laws of nature, physical phenomena, and abstract ideas. *Alice Corp. Pty. v. CLS Bank Int'l*, 573 U.S. 208, 216 (2014). These exceptions "are 'the basic tools of scientific and technological work' that lie beyond the domain of patent protection." *Ass'n for Molecular Pathology v. Myriad Genetics, Inc.*, 569 U.S. 576, 589 (2013) (quoting *Mayo Collaborative Servs. v. Prometheus Labs., Inc.*, 566 U.S. 66, 77-78 (2012)); *see also Alice*, 573 U.S. at 216. A claim to any one of these exceptions is directed to ineligible subject matter under § 101. "[W]hether a claim recites patent eligible subject matter is a question of law which may contain underlying facts." *Berkheimer v. HP Inc.*, 881 F.3d 1360, 1368 (Fed. Cir. 2018).

Courts follow a two-step "framework for distinguishing patents that claim laws of nature, natural phenomena, and abstract ideas from those that claim patent-eligible applications of those concepts." *Alice*, 573 U.S. at 217; *see also Mayo*, 566 U.S. at 77-78. First, at step one, the Court determines whether the claims are directed to one of the three patent-ineligible concepts. *Alice*, 573 U.S. at 217. If the claims are not directed to a patent-ineligible concept, "the claims satisfy § 101 and [the Court] need not proceed to the second step." *Core Wireless Licensing S.A.R.L. v.*

3

*LG Elecs., Inc.*, 880 F.3d 1356, 1361 (Fed. Cir. 2018).  If, however, the Court finds that the claims at issue are directed a patent-ineligible concept, the Court must then, at step two, search for an "inventive concept" – *i.e.*, "an element or combination of elements that is 'sufficient to ensure that the patent in practice amounts to significantly more than a patent upon the [ineligible concept] itself.'"  *Alice*, 573 U.S. at 217-18 (alteration in original) (quoting *Mayo*, 566 U.S. at 72-73).

1.  Step One of the *Alice* Framework

At step one of *Alice*, "the claims are considered in their entirety to ascertain whether their character as a whole is directed to excluded subject matter."  *Internet Patents Corp. v. Active Network, Inc.*, 790 F.3d 1343, 1346 (Fed. Cir. 2015); *see also Affinity Labs of Texas, LLC v. DIRECTV, LLC*, 838 F.3d 1253, 1257 (Fed. Cir. 2016) (step one looks at the "focus of the claimed advance over the prior art" to determine if the claim's "character as a whole" is to ineligible subject matter).  In addressing step one of *Alice*, the Court should be careful not to oversimplify the claims or the claimed invention because, at some level, all inventions are based upon or touch on abstract ideas, natural phenomena, or laws of nature.  *Alice*, 573 U.S. at 217; *see also McRO, Inc. v. Bandai Namco Games Am. Inc.*, 837 F.3d 1299, 1313 (Fed. Cir. 2016).  "At step one, therefore, it is not enough to merely identify a patent-ineligible concept underlying the claim; [courts] must determine whether that patent-ineligible concept is what the claim is 'directed to.'"  *Rapid Litig. Mgmt. Ltd. v. CellzDirect, Inc.*, 827 F.3d 1042, 1050 (Fed. Cir. 2016).

2.  Step Two of the *Alice* Framework

At step two of *Alice*, in searching for an inventive concept, the Court looks at the claim elements and their combination to determine if they transform the ineligible concept into something "significantly more."  *Alice*, 573 U.S. at 218; *see also McRO*, 837 F.3d at 1312.  This second step is satisfied when the claim elements "involve more than performance of 'well-

understood, routine, [and] conventional activities previously known to the industry.'" *Berkheimer*, 881 F.3d at 1367 (citation and internal quotation marks omitted); *see also Mayo*, 566 U.S. at 73. "The inventive concept inquiry requires more than recognizing that each claim element, by itself, was known in the art. . . . [A]n inventive concept can be found in the non-conventional and non-generic arrangement of known, conventional pieces." *Bascom Glob. Internet Servs., Inc. v. AT&T Mobility LLC*, 827 F.3d 1341, 1350 (Fed. Cir. 2016). Whether claim elements or their combination are well-understood, routine, or conventional to a person of ordinary skill in the art is a question of fact. *Berkheimer*, 881 F.3d at 1368.

At both steps of the *Alice* framework, courts often find it useful "to compare the claims at issue with claims that have been considered in the now considerably large body of decisions applying § 101." *TMI Sols. LLC v. Bath & Body Works Direct, Inc.*, No. 17-965-LPS-CJB, 2018 WL 4660370, at *5 (D. Del. Sept. 28, 2018) (citing *Amdocs (Israel) Ltd. v. Openet Telecom, Inc.*, 841 F.3d 1288, 1294 (Fed. Cir. 2016)); *see also Enfish, LLC v. Microsoft Corp.*, 822 F.3d 1327, 1334 (Fed. Cir. 2016).

C.      Pleading Direct Infringement

Liability for direct infringement arises under 35 U.S.C. § 271(a) when a party, without authorization, "makes, uses, offers to sell, or sells any patented invention, within the United States or imports into the United States any patented invention during the term of the patent." The activities set forth in § 271(a) do not result in direct infringement unless the accused product embodies the complete patented invention. *See Rotec Indus., Inc. v. Mitsubishi Corp.*, 215 F.3d 1246, 1252 & n.2 (Fed. Cir. 2000). Therefore, to state a claim of direct infringement sufficient to withstand a motion to dismiss, a plaintiff must plead facts that plausibly suggest that the accused

product meets each limitation of the asserted claim(s).  *See TMI Sols. LLC v. Bath & Body Works Direct, Inc.*, C.A. No. 17-965-LPS-CJB, 2018 WL 4660370, at *9 (D. Del. Sept. 28, 2018).

The Federal Circuit has provided guidance on pleading direct infringement under *Iqbal / Twombly*.  *See generally Disc Disease Sols. Inc. v. VGH Sols., Inc.*, 888 F.3d 1256 (Fed. Cir. 2018). In *Disc Disease*, the Federal Circuit reversed the district court's dismissal of plaintiff's direct infringement claims, finding that the plaintiff's allegations were sufficient under the plausibility standard of *Iqbal* and *Twombly* because the complaint specifically identified the three accused products and alleged that the accused products met "each and every element of at least one claim" of the asserted patents, either literally or equivalently.  *Disc Disease*, 888 F.3d at 1260.  Following *Disc Disease*, another court in this District similarly found that a plaintiff plausibly pleaded an infringement claim where the complaint specifically identified the infringing product and alleged "that it practices each limitation of at least one claim in" the relevant patents.  *Promos Tech., Inc. v. Samsung Elec. Co.*, No. 18-307-RGA, 2018 WL 5630585, at *4 (D. Del. Oct. 31, 2018); *see also AgroFresh Inc. v. Hazel Techs., Inc.*, No. 18-1486-MN, 2019 WL 1859296, at *2 (D. Del. Apr. 25, 2019) (applying *Disc Disease* to find allegations of direct infringement sufficiently pleaded); *DoDots Licensing Sols. LLC v. Lenovo Holding Co.*, No. 18-98-MN, 2018 WL 6629709, at *2 (D. Del. Dec. 19, 2018) (same).[4]

## II.   THE COURT'S RULING

The ruling on Defendants' motions to dismiss[5] under Rule 12(b)(6) was announced from the bench at the conclusion of the hearing as follows:

> Thank you for the arguments today.  They were helpful.  I
> am prepared to rule on the pending motions.  I will not be issuing a

---

[4]     The legal standard for direct infringement set forth in this Memorandum Order is derived from the Court's opinions in *DoDots* and *AgroFresh*.

[5]     (D.I. 11 in C.A. No. 19-2370; D.I. 12 in C.A. No. 20-1339).

written opinion, but I will issue an order stating my rulings. I want to emphasize that although I am not issuing a written opinion, we have followed a full and thorough process before making the decisions I am about to state. There was briefing on the pending motions, there were additional submissions discussing what each party viewed as the most analogous case and there has been oral argument here today. All of the submissions and the arguments have been considered.

As to the law, I am not going to read into the record my understanding of Section 101 law or the applicable pleading standards. I have a legal standard section that I have included in earlier orders, including in *Innovative Global Systems, LLC v. Keep Truckin, Inc.*, No. 19-641. I incorporate that law and adopt it into my ruling today and I will also set it out in the order that I issue.

Now as to my rulings. There are two patents, U.S. Patent No. 8,667,559, which is asserted against both Gryphon and Norton, and U.S. Patent No. 7,899,438, which is asserted only against Gryphon. The '559 Patent is a continuation of the '438 Patent. The patents claim systems and methods for controlling access on a user's communication device and implementing rules for use of that communication device.

Defendants have each moved to dismiss pursuant to Rule 12(b)(6), arguing that the asserted claims are directed to patent-ineligible subject matter. And Gryphon has also moved to dismiss the claims of infringement on the basis that Plaintiff has failed to adequately state a claim.

Taking those issues in turn, after reviewing the entire record, hearing argument, and applying the law as I understand it, I am going to deny the motions to the extent they are based on patent eligibility.

As to the '559 Patent, Gryphon and Norton treat claim 27 as representative of all claims.

[Claim 27 of the '559 Patent recites:

27. A method for controlling a computing device configured to execute a function using a communication network managed by a service provider, the method comprising:

sending to a server a request to communicate with a remote computing device over the communication network;

> receiving in real-time from the server a decision granting or denying the request, the decision being based on a policy stored at the server and configured by an administrator; and
>
> enforcing the decision by enabling a communication with the remote computing device over the communication network when the decision grants the request and by disabling the communication when the decision denies the request, the communication being enabled or disabled without storing the policy on the computing device.]

As to the '438 Patent, which is only asserted against Gryphon, Gryphon treats claim 27 as representative of all claims.

> [Claim 27 of the '438 Patent recites:
>
> 27. A system for managing in real-time a communication device used by a user on a communication network, comprising:
>
> > a policy decider housed within a network device on the communication network for storing a list of policies that control one or more features or functions associated with the communication device and for automatically deciding to accept or deny a request sent to or from the communication device to perform the features or functions based on one or more policies from the list of policies; and
> >
> > a policy enforcer housed within a network device on the communication network for communicating the request to the policy decider and enforcing a decision by the policy decider as to whether the request has been accepted or denied by either notifying the user of the denied request and taking one or more actions consistent with the denied request or taking one or more actions consistent with the accepted request.]

Gryphon, however, does not offer any significant analysis on the representativeness.

Turning first to the '559 Patent, in the briefing, Norton argued that the abstract idea is: "limiting access to functions based

8

on policies,"[6] whereas Gryphon suggested, without really clearly stating, that the abstract idea is "controlling access to devices."[7] Today, in an effort to streamline their arguments, Defendants argued that the abstract idea claimed in the '559 Patent is "policy-based access management," using claim 27 as the representative claim.

Regardless of the various articulations, Defendants' argument is essentially that the claims are directed to limiting the access to or the functionality of a device. In Defendants' view, this is nothing more than performing a human activity through use of generic computer components operating in a conventional way.

Today in argument, Defendants cited *ChargePoint, Inc. v. SemaConnect, Inc.*, 920 F.3d 759 (Fed. Cir. 2019), as the most analogous case. I know that in the briefing and here in arguing about the '438 Patent, Gryphon relied on *Ericsson* and I want to address that as well.

*ChargePoint* involved network-connected charging stations for electric vehicles, and the specification explained that the prior art suffered from a lack of communication network that allowed utility companies, businesses and drivers to interact efficiently as it related to electricity needs. The inventive communication network was touted as potentially providing the ability to manage electricity demands of vehicles and power grids by allowing interconnectivity. And the specification described the claimed invention as a network system that allowed drivers to locate charging stations and pay for charging, and it also allowed utility companies to provide information relating to electricity demands.

Against this backdrop, the Federal Circuit found the claims at issue to be directed to the abstract idea of network communication for device interaction. In reaching this conclusion, the Federal Circuit rejected the contention that the claimed invention was an improvement in technology, particularly in light of the significant breadth of the claims and the fact that the focus of the claims was on facilitating business interactions. In Defendants' view, the breadth of the claims of the '559 Patent renders them indistinguishable from *ChargePoint*, particularly given that the purported technological benefits touted by Plaintiff (*e.g.*, improved security) do not appear in the '559 Patent claims.

---

[6]      (C.A. No. 20-1339, D.I. 13 at 9).

[7]      (C.A. No. 19-2370, D.I. 12 at 6).

As I mentioned, Gryphon relies heavily on *Ericsson, Inc. v. TCL Communication Technology Holdings, Ltd.*, 955 F.3d 1317 (Fed. Cir. 2020), to argue that the claims, including those in the '438 Patent to be addressed in a few minutes, are directed to an abstract idea. In Gryphon's view, the claims here are indistinguishable from that case. In *Ericsson*, the claims were directed to a system for controlling access to a platform (*e.g.*, a mobile device), where the platform included various components, including an access controller, interception module and a combined decision entity / security access manager to determine whether access to the controller should be granted. At step one, the Federal Circuit found that the claims were directed to the abstract idea of "controlling access to resources by receiving a request and determining if the request for access should be granted."[8] It was the court's view that the claims were drafted in largely functional terms without any indication of how to control such access, suggesting that the focus of the claims was merely the abstract idea of controlling access to resources. Moreover, according to the court, the claims were focused on using computer components to perform an action that can readily be done by humans (*i.e.*, limiting access to something). In Gryphon's view, the claims here are no different – rather, the focus of the claims here is on a request for access or permission to use a functionality on a communication device, drafted largely in functional terms and using only conventional computer technology.

Plaintiff argues that the invention claimed in the '559 Patent is an improvement in the operation of computers and not the use of computers as tools – *i.e.*, the claims are directed to "improvements in the security and effectiveness in how systems implementing policy-based control over communication devices operate."[9] In particular, Plaintiff argues that the claimed invention is "to a specific configuration and implementation of certain software and hardware network components to effectuate policy-based control of network devices . . . namely, specific solutions in which the policies applied are stored remotely and are, therefore, inaccessible by the controlled device."[10] Plaintiff is attempting to fit the claims of the '559 Patent into the *Enfish* line of cases, where the Federal Circuit has repeatedly held that certain improvements in the way computers or technology operate fall outside the realm of abstract ideas.

---

[8]     *Ericsson*, 955 F.3d at 1326.

[9]     (C.A. No. 19-2370, D.I. 13 at 9; *see also* C.A. No. 20-1339, D.I. 19 at 10).

[10]     (C.A. No. 19-2370, D.I. 13 at 9; *see also* C.A. No. 20-1339, D.I. 19 at 10-11).

Plaintiff focuses largely on *Ancora Technologies, Inc. v. HTC America, Inc.*, 908 F.3d 1343 (Fed. Cir. 2018), which involved claims directed to methods of limiting software execution on computers without permission to run the software by using a key stored in BIOS.  There, the Federal Circuit found that the claims were like those in *Enfish*, *Data Engines*, etc., in that they were directed to a specific way of improving how a computer operates and, in particular, how it verifies permission to run software while improving the computer's security in the process, thus avoiding some of the problems with prior art methods – *e.g.*, hackers could access, they were costly and they were not easily obtainable by downloading, all of which were described in the specification.

Focusing first on claim 27 of the '559 Patent, unlike *Ancora*, *Enfish* and that line of cases, claim 27 viewed as a whole is not directed to an improvement in the functioning of technology – rather, the focus of the claim is on using generic technology to implement the abstract idea of controlling access to and the functionality of a user's communication device.  That is, claim 27 does not seem analogous to *Ancora* because there, a verification structure was embedded into the computer BIOS, which was not ordinarily used for software verification, and that improved security as BIOS is much harder to hack, whereas here policies for controlling access to functionality that were used before are apparently now stored elsewhere to prevent user interference with the policies.  This case feels to me, and I think during argument Plaintiff largely agreed, like it is much more akin to using technology as a tool to modify human behavior rather than being an improvement in the technical operation of those access controls.  This conclusion is bolstered by the fact that the prior art problems highlighted by the specification are largely rooted in human behavior and not necessarily technological shortcomings.[11]

I agree with Defendants that the invention in claim 27 of the '559 Patent is much more akin to the claims at issue in *ChargePoint* and *Ericsson*.  As I've already discussed, the claims at issue in those cases were focused on using technology to render a human activity easier or more efficient – enhancing network connectivity of various entities in *ChargePoint* and limiting access to a communication platform in *Ericsson*.  Moreover, those claims were broad and drafted in largely functional terms, suggesting that the focus of the claims at issue was largely on a result rather than how to achieve

---

[11]    (*See, e.g.*, '559 Patent at 1:54:62, 2:1-9 (parent taking away child's cell phone because of unexpected charges by child) & 2:10 (same issue with employer and employee); *see also id.* at 3:7-59).

that result – an indicator that a claim is directed to an abstract idea. Here, claim 27 of the '559 Patent is drafted broadly, and the purported security-based improvement is not readily evident from the claim language. Rather, viewing the claim as a whole and against the behavior-based prior art problems highlighted in the specification, the claim is more focused on modifying human activity than improving technological operation. That is, the focus of claim 27 is not to an improvement in the relevant technology (security or otherwise), but rather to a general way of limiting access to a device using computers as tools.

In sum, I find that claim 27 of the '559 Patent is directed to the abstract idea of controlling access to and the functionality of a device. Although there was some dispute in the briefing as to representativeness, Plaintiff agreed today that the claims of the '559 Patent rise and fall together for purposes of this motion. That is, there is no dispute about claim 27 being representative of the claims at issue, and I also find that the claims are substantially similar and linked to the same abstract idea. Thus, when viewing the claims as a whole and looking to their purported improvement over the prior art, I find the claims of the '559 Patent to be directed to the abstract idea of controlling access to and the functionality of a device.

Turning to step two of the analysis, Defendants argue that the claims of the '559 Patent use only generic computer and networking components performing conventional computer functions and that this is insufficient to confer an inventive concept.

Plaintiff asserts that the '559 Patent claims recite an unconventional arrangement of components sufficient to confer and inventive concept to the otherwise abstract idea of controlling access to devices. In particular, Plaintiff emphasizes the remote storage of access and control policies as something other than well known, routine or conventional.[12] According to Plaintiff, this unconventional manner of storing policies for access and control away from the device itself improved the security and effectiveness of the control of such devices because it prevented the user from interfering with the control policies. In support of these arguments, Plaintiff points to allegations in its complaints and the expert declaration of Dr. Knutson, which was incorporated by reference into Plaintiff's complaints.[13] In its complaints, Plaintiff includes a number of allegations that plausibly suggest this remote storage

---

[12]    (C.A. No. 19-2370, D.I. 13 at 13; C.A. No. 20-1339, D.I. 19 at 17).

[13]    (C.A. No. 19-2370, D.I. 13 at 13; C.A. No. 20-1339, D.I. 19 at 17).

feature was unconventional and offered security advantages over prior methods of controlling access to devices.[14]

It is worth noting here that another court in the Central District of California has looked at claim 27 of the '559 Patent through the lens of Section 101 at the motion to dismiss stage and concluded that Plaintiff had eventually pleaded enough to survive at step two of the *Alice / Mayo* inquiry.  That pleading, which was an amended complaint filed in response to dismissal under Section 101, included similar allegations of unconventionality with respect to the remote storage feature and included the Knutson declaration that Plaintiff relies on here.  The California court found those allegations sufficient to survive a motion to dismiss, particularly because the allegations plausibly suggested an unconventional arrangement of claim elements in claim 27 of the '559 Patent – *i.e.*, remote storage of control policies and real-time receipt and enforcement of control decisions.

I agree.  Plaintiff's complaints include plausible factual allegations that the claimed invention improves upon the prior conventional systems by remotely storing policies for controlling access to the computing device.  The complaints explain how this feature was unconventional and offers specific advantages to the resultant system over the prior systems.   And the complaints incorporate the expert declaration of Dr. Knutson, who explains the unconventionality of this remote storage and the purported benefits that flow from it.[15]   There is nothing in the '559 Patent that contradicts these allegations.  Under *Berkheimer*, whether the claim elements and their ordered combination is simply well known, routine and conventional is a question of fact and, in this case, because there are plausible factual allegations as to the unconventionality of the remote storage of access policies, there is a factual dispute that precludes dismissal.

I do not agree that Plaintiff's pleading must point to portions of the specification that support its contention that certain limitations are ***not*** well understood, routine or conventional.  At a motion to dismiss, *Aatrix* requires me to resolve any plausibly alleged factual issues in favor of the patentee at step two.  This means that if Plaintiff includes in its complaint plausible factual allegations that support the conclusion that the claim elements or their ordered combination were not well understood, routine or

---

[14]    (*See, e.g.*, C.A. No. 19-2370, D.I. 1 ¶¶ 10-19 & 34-39; C.A. No. 20-1339, D.I. 1 ¶¶ 10-19 & 33-39).

[15]    (*See, e.g.*, C.A. No. 19-2370, D.I. 1 ¶ 39 n.2; C.A. No. 20-1339, D.I. 1 ¶ 38 n.2).

conventional and there is nothing in the record that I can properly consider on a motion to dismiss that contradicts those allegations, then those factual issues must be decided in favor of Plaintiff.

Thus, at step two, I cannot conclude that the claim elements or their ordered combination are well known, routine or conventional activities known in the art, thereby failing to confer an inventive concept. Given the constraints of *Berkheimer* and *Aatrix*, I cannot resolve this question today in light of Plaintiff's plausible factual allegations in the complaints that are uncontradicted by the '559 Patent and anything else I can properly consider at this stage. Defendants' motions as related to the '559 Patent are denied with leave to renew at summary judgment to the extent there are no factual issues precluding resolution of the Section 101 issues at that time.

Turning now to the '438 Patent, which is only asserted against Gryphon, I reach the same conclusion for the reasons I just explained for the '559 Patent. I do so because the parties largely analyze the two patents together under Section 101. Gryphon essentially lumps the '559 and '438 Patents together in its Section 101 analysis, with no distinctions made at step one of the *Alice / Mayo* inquiry.[16] Plaintiff followed suit, arguing that the claims of the '559 and '438 Patents pass step one without making any distinctions between the two patents. At step two, Gryphon does attempt to argue that there is a meaningful difference in the '438 Patent, namely that there is no requirement for remote storage of control policies.[17] But Plaintiff argues that its expert declaration for the '559 Patent is "equally applicable" to claim 27 of the '438 Patent.[18] And Plaintiff argued in its briefing[19] and here today that claim 27 of the '438 Patent has the same remote storage requirement as in the '559 Patent. Gryphon disputes that there is any such requirement in the '438 Patent claims. Therefore, at least claim construction appears to be necessary before reaching a conclusion at step two for the '438 Patent. And if I were to resolve this claim construction dispute in Plaintiff's favor, the same factual issues that prevented dismissal for the '559 Patent would also preclude me from dismissing as to the '438 Patent. Gryphon's counsel conceded that today during the argument. Therefore, although the claims of the

---

[16]     (*See* C.A. No. 19-2370, D.I. 12 at 5-10).

[17]     (*See* C.A. No. 19-2370, D.I. 12 at 10-11).

[18]     (C.A. No. 19-2370, D.I. 13 at 8 n.6).

[19]     (C.A. No. 19-2370, D.I. 13 at 15).

'438 Patent are directed to the same abstract idea as in the '559 Patent, on this record I cannot resolve the question of whether the claim elements or their ordered combination are simply well understood, routine or conventional activities. Gryphon's motion as it relates to the '438 Patent is therefore also denied with leave to renew at summary judgment to the extent there are no factual issues precluding resolution of the Section 101 issues at that time.

So that is my ruling on the 101 motions. Next, we have Gryphon's motion to dismiss for failure to state a claim. Specifically, Gryphon moves to dismiss the claims of direct and indirect infringement as to claim 27 of the '559 Patent, which is a method claim and the only asserted claim called out in the Complaint, as well as to claim 27 of the '438 Patent. Plaintiff accuses "all versions of the Gryphon Mesh WiFi Security Router products and services" of infringing these claims.[20] I am going to grant this part of the motion.

The relevant pleading standard for direct infringement can be found in *Disc Disease*. I have on several occasions noted that *Disc Disease* sets forth a relatively low threshold for adequately pleading direct infringement. Here, however, Plaintiff has failed to meet even that relatively low bar. Nowhere in Plaintiff's complaint is there any allegation that the accused Gryphon products meet each and every limitation of claim 27 (or any other claim) of the two asserted patents. And there is no attempt to map the accused products onto the limitations of the asserted claims. Indeed, the only allegation that Plaintiff sets forth is a recitation of the activities from 35 U.S.C. § 271(a) purportedly attributable to Gryphon and that the accused products "practice" or "embody" the identified claims.[21] Plaintiff's allegations have failed to rise to the threshold required by *Disc Disease* and the claims of direct infringement will be dismissed. Plaintiff will be given leave to amend but, to the extent Plaintiff alleges Gryphon's products infringe method claims, those allegations shall be limited to "use" under § 271(a) as the law is clear that making, selling, offering to sell or importing a product cannot directly infringe a method claim.

As to induced and contributory infringement, a prerequisite to stating a claim of indirect infringement is that Plaintiff plausibly allege the requisite underlying act of direct infringement has

---

[20]   (*See, e.g.*, C.A. No. 19-2370, D.I. 1 ¶¶ 21, 41 & 57).

[21]   (*See* C.A. No. 19-2370, D.I. 1 ¶¶ 41 & 57).

occurred.[22]   Because Plaintiff has failed to adequately plead an underlying act of direct infringement, the claims of indirect infringement must also be dismissed.

Gryphon's motion to dismiss as it relates to the *Iqbal / Twombly* issues is therefore granted and Plaintiff shall have 21 days to file an amended pleading.  I will note that Plaintiff's pleading was pretty lacking in many respects.  Prior to filing any amended pleading, Plaintiff should carefully review the elements of each cause of action asserted and include factual allegations to render it plausible that Gryphon is liable for the acts accused.  And because dismissal is warranted on other grounds, I do not reach the issue of failure to plead marking – but as we discussed here today, it is Plaintiff's burden to do so, and Plaintiff should review the relevant law and plead marking to the extent it is appropriate in any amended pleading.

_Maryellen Noreika_
The Honorable Maryellen Noreika
United States District Judge

---

22   *See In re Bill of Lading Transmission & Processing Sys. Patent Litig.*, 681 F.3d 1323, 1336 (Fed. Cir. 2012); *see also Linear Tech. Corp. v. Impala Linear Corp.*, 379 F.3d 1311, 1326 (Fed. Cir. 2004) ("There can be no inducement or contributory infringement without an underlying act of direct infringement.").