**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| **KAJEET, INC.,** | § | |
| | § | |
| **Plaintiff,** | § | **C.A. No.** 19-cv-2370-MN |
| | § | |
| **v.** | § | |
| | § | |
| **GRYPHON ONLINE SAFETY, INC.,** | § | **JURY TRIAL DEMANDED** |
| | § | |
| **Defendant.** | § | |
| | § | |
| | § | |

**FIRST AMENDED COMPLAINT AND JURY DEMAND**

Plaintiff KAJEET, INC. files this First Amended Complaint for Patent Infringement against Defendant GRYPHON ONLINE SAFETY, INC., alleging as follows:

## I.      THE PARTIES

1.      KAJEET, INC. ("Plaintiff" or "Kajeet") is a corporation organized and existing under the laws of the State of Delaware, with a principal place of business at 7901 Jones Branch Drive, Suite 350, McLean, Virginia 22102.

2.      Defendant GRYPHON ONLINE SAFETY, INC. ("Defendant" or "Gryphon") is a limited liability company organized under the laws of Delaware with a principal place of business at 10531 S. Commons Drive, # 635, San Diego, California 92127.  Gryphon has already appeared in this case and may be served through its counsel of record.

1

## II.       JURISDICTION AND VENUE

3.       This is an action for infringement of United States patents under 35 U.S.C. §§ 271, *et seq.* Federal question jurisdiction is conferred to this Court over patent infringement actions under 28 U.S.C. §§ 1331 and 1338(a).

4.       Defendant is incorporated within this District and develops and/or sells its products, including the Accused Products described herein, in this District.

5.       Defendant has sufficient minimum contacts with the District of Delaware such that this venue is fair and reasonable.  Defendant has committed such purposeful acts and/or transactions in this District that it reasonably should know and expect that they could be hailed into this Court as a consequence of such activity.  Defendant has transacted and, at the time of the filing of this Complaint, continues to transact business within the District of Delaware.

6.       Further, upon information and belief, Defendant makes or sells products that are and have been used, offered for sale, sold, and/or purchased in the District of Delaware.  Defendant directly and/or through its distribution network, places infringing products or systems within the stream of commerce, which stream is directed at this district, with the knowledge and/or understanding that those products will be sold and/or used in the District of Delaware.

7.       For these reasons, personal jurisdiction exists, and venue is proper in this Court under 28 U.S.C. §§ 1391(b) and (c) and 28 U.S.C. § 1400(b), respectively.

## III.      BACKGROUND AND FACTS

8.       Kajeet is the owner of all rights and title in and to U.S. Patent No. U.S. Patent No. 8,667,559 ("the '559 Patent") and U.S. Patent No. 7,899,438 ("the '438

Patent").   These patents are sometimes referred to collectively hereinafter as "the Asserted Patents."   The respective inventions disclosed and claimed in the Asserted Patents were developed by the founders, entrepreneurs, and engineers of Kajeet and were assigned to Kajeet upon issuance.

9.   Kajeet is a U.S.-based company, founded in 2003, which develops software and hardware solutions promoting safe use of mobile devices by children both at home and in schools and libraries.   Kajeet was founded by three fathers who sought to develop systems and methods ensuring safe use of mobile phones, tablets, computers, and other mobile devices by their children.

10.   Kajeet has become an industry leader in this area of mobile device management, developing innovations that led to the issuance of thirty-eight U.S. patents to date, including the Asserted Patents, and having implemented its solutions in hundreds of school districts comprising thousands of schools across the nation.   These innovations were directly developed by the founders and engineers at Kajeet as part of Kajeet's continuous work to protect children from inappropriate and distracting online content, and to enable schools and families to keep children focused and safe from the many potential dangers associated with unconstrained access to online content.

11.   The disclosure and claims of the Asserted Patents describe improved control schemes implemented on communication devices, focusing on applications in which it is undesirable for the user of the communication device to have unfettered or unconstrained access to some or all of the available functionality supported by the

communication device.  See, e.g., the '559 Patent at 1:47-62.[1]  A typical scenario addressed by the Asserted Patents is that of a smartphone, tablet, or laptop used by a child.  See, e.g., the '559 Patent at 4:11-18; 4:38-44; and, 5:20-29. This is a relatively new problem that has arisen in the past decade as mobile communication devices have become more popular and more widely used throughout society, including in schools and at home by children.  See, e.g., the '559 Patent at 1:51-58; 2:10-21; 4:42-58; 6:34-49; 12:48-62; and, 14:13-23.

12.    Mobile smartphones appeared in the mid-1990s as Personal Digital Assistants ("PDAs").  These devices expanded the set of features accommodated by handheld mobile communication devices and their appearance coincided with the rise in popularity and use of the World Wide Web.  In 2007, Apple released the first iPhone and in 2008 released the App Store.  This signaled the beginning of mainstream smartphone ownership and usage and, in particular, ownership and usage of feature-rich smartphone devices by teens and children. Also, during this timeframe, other Internet-capable, mobile computing devices greatly expanded in popularity, including tablet devices, including iPads and Kindles, as well as laptop devices, including the Google Chromebook. Increasingly, these devices are put in the hands of teens and children both by their parents and by schools, giving them ready access which they never had before to inappropriate content, contacts, sexting, online gaming, among other undesirable features and functionality.  Further, this new access is cheap, anonymous, and readily-available at any

---

[1] All citations to the Patent-in-Suit are to the '559 Patent, which is attached hereto as Exhibit A, unless otherwise stated.  The citations provided are illustrative rather than exhaustive and therefore do not comprise complete listings of all portions of the specification addressed to each topic for which citations are provided.  Further, because each of the Patents-in-Suit share a common specification, the cited passages are equally applicable to each of the Patents-in-Suit.

4

time, day or night from virtually anywhere. Parents, as well as school administrators and others, have struggled with addressing this newly created problem ever since.

13.     The Patents-in-Suit are addressed to specific systems and methods for addressing this new problem faced by parents, teachers, business owners, and the like. The Patents-in-Suit recognize that old-world methodologies, such as simply taking the devices away, do not truly address the problem at hand and undermine the safety benefit of device ownership – continuous access for communication, such as always providing a direct means for a parent to call its child or vice versa. For device ownership by teens and others to provide this benefit, the device is necessarily in the possession of the teen at times when he or she is *away from* parents, teachers, and the like. Old-world monitoring of device use to preventing inappropriate use is therefore also ineffective and does not address the true context of this new problem in society created by the development and proliferation of feature-rich mobile communication devices.

14.     As explained in the specification of the Patents-in-Suit, prior art systems and methods for controlling mobile communication device usage in such settings were ineffective. For example, prepaid phone plans placed limits on the charges that could be run up on a mobile communication device but did so through toggling access to the communication network off once the account reached a zero balance. Beforehand, access to the communication network may be unconstrained while after, no access is provided whatsoever. This control scheme was ineffective for preventing misuse of the mobile communication device by a child while still providing access to desirable features. See, *e.g.*, the '559 Patent at 2:36-44.

15.     Likewise, unlimited use smartphone service plans could prevent the accumulation of excessive usage costs but were ineffective to prevent overuse or use of a mobile communication device at inappropriate times or to access inappropriate content. See, *e.g.*, the '559 Patent at 3:7-16.

16.     Other solutions involving control through enforcement of decisions based upon policies defining permitted use that were set and stored only in accessible portions of the memory of the device itself, such as in the volatile memory of the device.  These solutions were likewise ineffective as the policies upon which decisions effecting control were vulnerable to manipulation or deletion by virtue of their only being stored in accessible portions of memory of the computing device.  Further, such solutions required separate and independent configuration of each computing device to be controlled, resulting in increased administrative costs.

17.     The Patents-in-Suit state that the systems and methods disclosed therein "are effective tools for any phone user that requires some level of supervision, such as a handicapped individual, a person suffering from dementia, a corporate employee, or even an adult that has shown poor judgment in the past and needs help managing their affairs." '559 Patent at 5:34-41.  The Patents-in-Suit also state that:

> The ability to regulate **when a phone can be and cannot be used can also be of value to parents and school districts** with respect to resolving one of the greatest conflicts that exist between parents/students and school administrators - mobile phone usage by kids. Parents want children to have a mobile phone with them so the child can call the parent if need be, i.e., if someone forgets to pick the child up after school. School districts do not want the children to have the phones at all **because the students tend to misuse the phones, i.e., to call friends during school, to cheat, to engage in illegal activity, etc**. While the school districts believe that children should be relegated to only using the school phones if the children need to contact a parent, the parents

want the children to have the phones with them in case they get locked
out of the school, get lost on a field trip, etc. '559 Patent at 12:48-62
(emphasis added).

The Patents-in-Suit therefore recognize that it is advantageous to dispose the policies
applied for effecting feature management over communication devices in accordance
with a scheme that prevents access to them by the user of the device, who may have poor
judgment or be motivated to otherwise misuse the communication device.

18.    The specification the Asserted Patents discloses, among other innovations,
systems and methods for providing access to desirable features, such as always allowing
for calls to a parent, for example, while also preventing access to features deemed
inappropriate because of cost (e.g., downloadable games or other applications), type of
content (e.g., gambling or pornographic content), the time of day or night (e.g., during
school hours or after bed time), and/or the device's location, among other criteria.  See,
*e.g.*, the '559 Patent at 3:54-59; 4:11-18; 5:45-50; 13:8-28; and, Claims. The Asserted
Patents disclose control embodiments applying decisions based upon policies defining
acceptable and unacceptable uses of a mobile communication device.  The policies may
be based on a variety of contexts which are set by administrators (e.g., parents or
teachers).   In accordance with certain embodiments of the inventions disclosed, the
policies are set and stored at the server level to provide simultaneous control over use of
one or more mobile communication devices.  See, *e.g.*, the '559 Patent at embodiment of
Fig. 2; 3:54-59; 4:11-18; 5:45-50; 13:8-28; and, Claims. The intrinsic record states this at
Office Action Response dated October 17, 2013 filed during prosecution of the '559
Patent at p. 10 (distinguishing a particular embodiment claimed therein on the basis that
the prior art "does not describe a ***distributed architecture where policy decisions are***

7

*performed at the server level* and those policies are enforced on the phone itself.")(emphasis added).  A true and correct copy of this Office Action Response is attached hereto as Exhibit C and incorporated for all purposes.

19.     Application of use decisions based upon a policy stored remote from the controlled computing device represented an unconventional scheme that was neither well known nor routine for addressing a newly emerging problem in society.  Embodiments of the inventions disclosed and claimed in the Asserted Patents implementing this unconventional scheme provide for more robust control that was more resilient to manipulation and/or disablement by users of the controlled devices and, therefore, more effective than prior art systems and methods.

20.     Gryphon is a developer of software and hardware solutions accommodating feature management of communication devices configured for operation on communication networks, including laptops, tablets, smartphones, and the like.  Each comprises a computing device usable to access online content and applications over a communication network managed by a service provider, such as an internet service provider (ISP).

21.     The Accused Products of Gryphon include all versions of the Gryphon Mesh Wifi Security Router and Gryphon Guardian products and services.  The Accused Products accommodate management of mobile communication devices accessing content over communication networks via application of remotely stored master policies set by administrators (i.e., parents).

22.     The Accused Products each comprise a network appliance (a router) configured to communicate with software (the Gryphon Connect App and/or the Gryphon

HomeBound App) and configured for implementation within a home or other network accessing the Internet.  The Accused Products accommodate management of computing devices operating on the communication network, including tablets, smartphones, laptops, gaming consoles, cameras, smart gadgets, and the like.  The Gryphon appliance effects policy-based control over these communication devices through application of policies stored on the Gryphon appliance that are setup through the Gryphon Connect App.

23.    Administrators (i.e., parents) download the Gryphon Connect App and use it to set up device and user profiles and to establish usage policies associated to devices and/or profiles.  Policies may be content-based or time-based.  Policies are applied to control use of one or more communications devices to which they are associated.  They are stored on the Gryphon appliance and may additionally be stored on Gryphon's cloud servers. The Gryphon appliance is regularly updated from Gryphon's cloud servers.

24.    The Gryphon appliance connects to a Gryphon server over the Internet or to an administrator device using the Gryphon Connect App via a Bluetooth connection to receive and update usage policies.  Policies are selectively applied to manage use of controlled devices accessing a communications network.  As such, the Gryphon appliance functions as a guarded gateway between computing devices communicating over the home network and the Internet.  All attempts to use controlled devices in a manner requiring communication over the home network or Internet pass through the Gryphon appliance.  Likewise, attempts to communicate with a controlled device over the communication network by other devices are routed through the Gryphon appliance.

25.     Data relating to attempted network communications including, for example, the device making the request and the ISP address to be accessed, are obtained and compared to applicable policies defining acceptable and unacceptable network usage. For requests permitted by the applicable usage policies, the Accused Products transmit data back to a router and/or the managed device allowing the requested communication. For requests not permitted by one or more applicable usage policies, the Accused Products transmit data back to the router and/or the managed device blocking the requested communication.

26.     the Accused Products accommodate implementation of time-based policies defining permissible and impermissible device usage, including time limits and schedules applied by device and/or by profile.   Limits applied by profile are simultaneously applied to each device associated to a particular user profile.

27.     In operation, users of a managed device execute a function on the managed device requiring communication over a network.  The Accused Products detect this attempted use and format a usage request for comparison to applicable usage policies.  A copy of master policies set via the Gryphon Connect App are stored within and/or accessible to the Gryphon appliance and are regularly updated.  The request is compared to all applicable policies to determine, at least, whether the attempted communication or function is allowed or prohibited.  Policy decisions are made in real time by the Gryphon appliance in response to requests.  Data indicative of decisions whether to allow or deny such requests are communicated back to the router and/or the managed device.  Decisions are enforced via permitting or blocking execution of the requested function or communication.

28.     Gryphon also sells and provides a HomeBound App that can be installed on devices being managed by the Gryphon appliance. HomeBound is an extension of the Gryphon Wifi system. All of the features available on the home network with the Gryphon appliance are available when managed devices are connected via cellular or WiFi hotspots. The HomeBound App automatically and securely routes all traffic on the managed device back through the Gryphon appliance for application of relevant policies.

29.     Upon information and belief, the Accused Products effect feature management over computing devices connected to a home network or another communications network without storing the master policies applied on the computing devices, themselves.

30.     Based on the description of the structure and operation of Gryphon's products above, the Accused Products meet each and every limitation of claim 27 of the '559 Patent as shown in the following chart:

| Claim Element | Accused Products |
| --- | --- |
| A method for controlling a computing device configured to execute a function using a communication network managed by a service provider, the method comprising: | The Accused Products comprise hardware (Gryphon's router appliance and servers) and software (local agent applications downloaded to computing devices). The Accused Products are configured for implementation within a communications network to accommodate policy-based management of computing devices. Computing devices managed by the Accused Products include tablets, smartphones, laptops, and the like which are connected to the Internet via an internet service provider or cellular network. |
| sending to a server a request to communicate with a remote computing device over the communication network; | Gryphon software, such as the HomeBound mobile application, for example, is installed on computing devices being managed. This local agent software operates to route all traffic back to through the Gryphon router to |

| | effect policy-based control over the computing device when the computing device is connected to a communications network other than the home network or to a cellular network.<br><br>When on the home network, the Gryphon router appliance operates to detect attempted use of the communications network by a controlled device and compare the attempted use to relevant policies. |
|---|---|
| receiving in real-time from the server a decision granting or denying the request, the decision based on a policy stored at the server and configured by an administrator; and | The Accused Products either permit requested usage or block it in accordance with the decision made at the Gryphon router making policy decisions.<br><br>These decisions are based on the application of policies, such as time usage limits, which are configured by administrators (i.e., parents) via a web dashboard interface accessible using the Gryphon Connect app.  Policies are stored on Gryphon's servers as well as on the Gryphon router appliance, both of which are remote from the controlled computing device(s) and accommodate server functionality.<br><br>Policies are applied in real time in response to attempts to use a controlled device accessing a communications network to allow or disallow use of various functions on the device. |
| enforcing the decision by enabling a communication with the remote computing device over the communication network when the decision grants the request and by disabling the communication when the decision denies the request, the communication being enabled or disabled without storing the policy on the computing device. | Policies are applied in real time in response to attempts to use a controlled device accessing a communications network to allow or disallow use of various functions on the device.<br><br>The Accused Products enforce policy decisions via control at the Gryphon router appliance for devices connected to a home network to either permit Internet traffic, block access to content, or enforce time limits.  The Accused Products enforce policy decisions at |

12

| | Gryphon's router appliance and/or other remote servers for devices implemented with the HomeBound application that are accessing a communications network other than the home network or are accessing a cellular network. |
| --- | --- |
| | In either implementation, the policies applied are stored on Gryphon hardware remote from the computing device(s) – on the Gryphon router appliance and on one or more Gryphon servers. |

31.     Based on the description of the structure and operation of Gryphon's products above, the Accused Products meet each and every limitation of claim 27 of the '438 Patent as shown in the following chart:

| Claim Element | Accused Products |
| --- | --- |
| A system for managing in real-time a communication device used by a user on a communication network, comprising: | The Accused Products comprise hardware (Gryphon's router appliance and servers) and software (local agent applications downloaded to computing devices). |
| | The Accused Products are configured for implementation within a communications network to accommodate policy-based management of communication devices connected thereto. Communication devices managed by the Accused Products include at least tablets, smartphones, laptops, and the like. |
| a policy decider housed within a network device on the communication network for storing a list of policies that control one or more features or functions associated with the communication device and for automatically deciding to accept or deny a request sent to or from the communication device to perform the features or functions based on one or more | The Accused Products either permit requested usage or block it in accordance with the decision made at the Gryphon router and/or Gryphon server(s) making policy decisions. Both Gryphon hardware components are network devices connected to a communications network, such as a home network and the Internet, for example. |
| | Decisions are based on the application of policies, such as time usage limits, which are |

13

| | |
|---|---|
| policies from the list of policies; and | configured by administrators (i.e., parents) via a web dashboard interface accessible using the Gryphon Connect app.  Policies are stored on Gryphon's servers as well as on the Gryphon router appliance, both of which are remote from the controlled communications device(s).

Policies are applied in real time in response to attempts to use a controlled device accessing a communications network to allow or disallow use of various functions on the device. |
| a policy enforcer housed within a network device on the communication network for communicating the request to the policy decider and enforcing a decision by the policy decider as to whether the request has been accepted or denied by either notifying the user of the denied request and taking one or more actions consistent with the denied request or taking one or more actions consistent with the accepted request. | Policies are applied in real time in response to attempts to use a controlled communications device accessing a communications network to allow or disallow use of various functions on the device.

The Accused Products enforce policy decisions via control at the Gryphon router appliance for devices connected to a home network to either permit Internet traffic, block access to content, or enforce time limits.  The Gryphon router comprises software modules for performing both policy decision and policy enforcement functionality, via application of relevant policies to attempted uses or a communications device and via permitting or disabling access to the communication network to allow/disallow an attempted use.

Likewise, the Accused Products enforce policy decisions at Gryphon's servers for devices implemented with the HomeBound application and accessing a communications network other than the home network.

For denied requests, a notification screen is displayed on the controlled device(s) indicating that the attempted use violates an applicable policy and was blocked. |

32.     Gryphon provides instructions to its customers and users of the Gryphon appliance demonstrating how to install, set up, and use the Gryphon appliance to manage computing devices connected to a home network, including at least user manuals and/or content on its website.   Use of the Gryphon appliance in accordance with these instructions constitutes direct infringement of the Asserted Patents by end users of the Accused Products.

33.     Gryphon has had actual knowledge of the Asserted Patent and Kajeet's infringement allegations against the Accused Products since at least December 30, 2019, the date the Original Complaint was filed. Upon information and belief, Gryphon continues to make, use, and sell the Accused Products, including ongoing subscriptions, to its customers.

## COUNT I

## PATENT INFRINGEMENT

## U.S. Patent No. 8,667,559 B1

34.     Kajeet repeats and re-alleges all preceding paragraphs of this First Amended Complaint, as though fully set forth herein.

35.     On March 4, 2014, United States Patent No. 8,667,559 B1 ("the '559 Patent") was duly and legally issued for "Feature Management of a Communication Device."  As of the filing of this Complaint, the '559 Patent remains in force.  A true and correct copy of the '559 Patent is attached hereto as Exhibit A and made a part hereof.

36.     Kajeet is the owner of all right and title in the '559 Patent, including all rights to enforce and prosecute action for infringement of the '559 Patent and to collect damages for all relevant times against infringers of the '559 Patent.  Accordingly, Kajeet

possesses the exclusive right and standing to prosecute the present action for infringement of the '559 Patent by Gryphon.

37.     Kajeet has complied with 35 U.S.C. § 287 with respect to the '559 patent. Kajeet virtually marks its products in accordance with the statute by listing the appropriate Kajeet patent numbers on a page on its website. Kajeet regularly updates this page as new patents issue. That page can be accessed at the URL: https://www.kajeet.net/company/patents-and-licensing.  Kajeet is unaware of any credible challenge to its having complied with the marking provisions of 35 U.S.C. § 287.

38.     The '559 Patent generally discloses and claims systems and methods for controlling computing devices usable on communication networks to perform various functions, such as sending and receiving data over the Internet or other communication network, for example.  The systems and methods claimed accommodate enforcement of decisions granting or denying requests to communicate with remote computing devices over a communication network.  In accordance with the Asserted Claims, decisions are based on the application of one or more relevant use policies which are administrator-configurable and are stored remotely from the controlled computing device.  Decisions to grant or deny communication requests from the controlled device are made and effectuated in real-time.

39.     Independent claim 27 of the '559 Patent and each dependent claim depending therefrom are directed to "methods for controlling a computing device configured to execute a function using a communication network managed by a service provider."  '559 Patent at Claim 27.  These claimed methods require, among other steps, that a decision is received in real time from a server, with the decision

16

"being based on a policy stored at the server…," and that "the communication being enabled or disabled without storing the policy on the computing device." *Id.*

40.     These limitations mandate that the decision applied to effect control over the computing device is based on a policy stored at a server remote from the computing device.  The decision is made upon detection of an attempt by the computing device to perform a function on the communication network.  These limitations capture the distributed architecture concept <u>not</u> well-understood, routine, or conventional in the art for effecting feature management on a computing device including that the server storing the policies upon which decisions are based being meaningfully apart from the computing device.  This arrangement resulted in improved operation through at least increased resilience to undesirable access to policies to manipulate or delete them.

41.     These limitations additionally cover communications initiated by a third-party device and directed to a managed device.  Effecting control over these incoming communications to a communication device was likewise not well-understood, routine, or conventional to one of ordinary skill in the art.

42.     Claim 27 of the '559 Patent and each claim depending therefrom are rooted in control schemes for managing communication devices and require the application of decisions based upon remotely stored polices.  Remote storage of the policies upon which decisions are based makes them less vulnerable to manipulation and deletion while still accommodating real-time control concurrent with device usage. Communication device management in accordance with these claimed methods improves the security, effectiveness, and robustness of control accommodated.  As such, the claimed methods are directed to patent eligible subject matter.

43.     Additionally, when considered as an ordered combination of elements, claim 27 and each claim depending therefrom comprise an "inventive concept" for at least the reasons presented herein and above.  These claims require storing usage policies upon which decisions are based at a server remote from the computing device, an unconventional arrangement at the time which yielded improvements in the operation of systems implementing the claimed methods.  Prior art control was not premised on application of decisions based upon policies stored at the server level.  Instead, the prior art applied decisions based on policies set up on the computing device itself and stored only on the computing device.  Such policies reside such that they are readily accessible for manipulation and/or deactivation or deletion to circumvent control entirely.  Further, prior art systems required that each device be configured separately and individually with its own set of policies.  The arrangement claimed in claim 27 and its dependent claims run counter to what was well-understood, routine, and conventional to one of ordinary skill in the art at the relevant time by applying usage decisions to effect control that are based upon policies stored at the server level, remote form the computing device, while effecting real-time control over communication devices and providing other benefits, as noted herein and above.[2]

44.     Gryphon has had actual knowledge of the existence of the '559 Patent and Kajeet's infringement allegations against the Accused Products since at least December

---

[2] These statements are further supported by the declarations of Dr. Charles D. Knutson, which were attached by Kajeet as Exhibits E and I to its Second Amended Complaint (Dkt. Nos. 144, 144-7, and 144-11). filed in the action styled *Kajeet, Inc. v. Qustodio, LLC*, case no. 8:18-cv-01519-JAK-PLA, in the United States District Court for the Central District of California, Western Division, and which are hereby incorporated by reference.

30, 2019, the date the Original Complaint was filed.  As such, Gryphon's infringement of the '559 Patent has been willful since that time.

45.     Gryphon, without authority, consent, right, or license, and in direct infringement of the '559 Patent, uses the Accused Products which practice the system and method claimed in at least claim 27 of the '559 Patent, among others, and it uses the Accused Products in a manner that meets every limitation of claim 27.  Gryphon's quality testing and demonstrations of operation of the Accused Products to manage use of computing devices directly infringe, either literally or under the doctrine of equivalents, at least claim 27 of the '559 Patent.

46.     Gryphon actively induces infringement of one or more of the claims of the '559 Patent by its customers and end users of at least the Accused Products and is therefore liable for indirect infringement under 35 U.S.C. § 271(b).  A customer's use of the Accused Products to manage computing devices in the manners described above infringes at least claim 27 of the '559 Patent.  Gryphon knows that the Accused Products are especially designed for and marketed toward infringing use by Gryphon's customers, to implement feature management of computing devices.  Gryphon has induced, caused, urged, encouraged, aided and abetted its direct and indirect customers to make, use, sell, offer for sale and/or import one or more of the Accused Products. Gryphon provides step-by-step instructions for installation, setup, and use of the Accused Products to infringe, either literally or under the doctrine of equivalents, at least claim 27 of the '559 Patent. These instructions are provided by Gryphon as user manuals and online content made available by Gryphon through its website, including links to several video tutorials providing instructions for device enrollment and for configuring policies stored on

Accused Product hardware such as screen time limits and restrictions on use of certain applications. These videos are created by Gryphon and accessible through its website as well as on Gryphon's YouTube channel.[3]   As such, Gryphon provides step by step instructions to its customers on how to install and set up the Accused Products to operate as described in the chart in paragraph 30. Gryphon likewise provides customers with information about the types of polices that can be set by an administrator and how they are set. Such conduct by Gryphon was intended to and actually did result in direct infringement by Gryphon's direct and indirect customers, including the making, using, selling, offering for sale and/or importation of the Accused Products in the United States. Gryphon knows that its customers are infringing by performing the steps of claim 27 because it operates the servers that store the policies and communicate with the managed devices.

47.     Gryphon contributes to the infringement of at least claim 27 of the '559 Patent by its customers and end users of at least the Accused Products and is therefore liable for indirect infringement under 35 U.S.C. § 271(c).   The Accused Products are especially designed for controlling use of computing devices in the manner described above.  As shown in the chart in paragraph 30, the components in the Accused Products that provide the infringing features have no other purpose than to operate in an infringing manner.  Consequently, the Accused Products have no substantial non-infringing use, as they are specifically designed and marketed for use by parents to control use of a

---

[3] See, e.g., links to product literature and YouTube videos on Gryphon's website (at URL: https://gryphonconnect.com/parental-control-router/ and URL: https://gryphonconnect.com/homebound/) which accesses tutorials for device enrollment and setting of time limits and other policies (https://www.youtube.com/channel/UCrjm6lAtUsZb5ffeF9sLydA), among others.

computing device operating on a communication network.  Setup and use of the Accused Products by Gryphon's customers in this manner constitutes direct infringement, either literally or under the doctrine of equivalents, of at least claim 27 of the '559 Patent. Gryphon knows that its customers are infringing by performing the steps of claim 27 because it operates the servers that store the policies and communicate with the managed devices.

48.     Kajeet expressly reserves the right to assert additional claims of the '559 Patent against Gryphon.

49.     Kajeet has been damaged as a result of Gryphon's infringing conduct. Gryphon is, thus, liable to Kajeet in an amount that adequately compensates for their infringement, which, by law, cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

50.     Based on Gryphon's actual knowledge of the '559 Patent and of Kajeet's allegations of patent infringement which are consistent with those presented herein since at least the date of the filing of the Original Complaint, if not earlier, as well as Gryphon's objective recklessness in continuing to offer for sale and selling the Accused Products since that time, Kajeet is further entitled to enhanced damages under 35 U.S.C. § 284.

## COUNT II

### PATENT INFRINGEMENT

### U.S. Patent No. 7,899,438 B2

51.     Kajeet repeats and re-alleges all preceding paragraphs of this Complaint, as though fully set forth herein.

52.     On March 1, 2011, United States Patent No. 7,899,438 B2 ("the '438 Patent") was duly and legally issued for "Feature Management of a Communication Device."  As of the filing of this Complaint the '438 Patent remains in force.  A true and correct copy of the '438 Patent is attached hereto as Exhibit B and made a part hereof.

53.     Kajeet is the owner of all right and title in the '438 Patent, including all rights to enforce and prosecute action for infringement of the '438 Patent and to collect damages for all relevant times against infringers of the '438 Patent.  Accordingly, Kajeet possesses the exclusive right and standing to prosecute the present action for infringement of the '438 Patent by Gryphon.

54.     Kajeet has complied with 35 U.S.C. § 287 with respect to the '438 patent.  Kajeet virtually marks its products in accordance with the statute by listing the appropriate Kajeet patent numbers on a page on its website. Kajeet regularly updates this page as new patents issue. That page can be accessed at the URL: https://www.kajeet.net/company/patents-and-licensing.  Kajeet is unaware of any credible challenge to its having complied with the marking provisions of 35 U.S.C. § 287.

55.     The '438 Patent includes claims to systems and methods for managing computing devices usable on communication networks to perform various functions, such as sending and receiving data over the Internet via one or more servers or other network devices, for example.  The systems and methods comprise network devices through which usage requests are routed along with decision making and enforcement functionality accommodated by software and/or hardware modules.  In accordance with the Asserted Claims, policy decisions are based on the application of one or more relevant usage policies which are administrator-configurable and are stored remotely

22

from the controlled computing device.  Decisions to grant or deny requests are enforced by software and/or hardware modules on a network device.

56.     More specifically, independent claim 27 of the '438 Patent and each dependent claim depending therefrom are directed to a "system for managing in real-time a computing device." '438 Patent at Claim 27.  These claimed systems explicitly require "a policy decider housed within a network device" for "storing a list of policies to control one ore more features or functions associated with the communication device". *Id.*  The policy decider automatically decides "to accept or deny a request sent to or from the communication device". *Id.* The claimed systems also require a "policy enforcer housed within a network device" for "enforcing a decision by the policy decider" by either "notifying the user of the denied request and taking one or more actions consistent with the denied request or taking one or more actions consistent with the accepted request". *Id.*

57.     These limitations mandate that the policies applied to manage the computing device be stored apart from the computing device based on the requirement that the policies are stored within a network device on the communication network. These limitations capture the distributed architecture concept not well-understood, routine, or conventional in the art for effecting feature management on a computing device (including that the device storing the policies is meaningfully apart from the computing device) which resulted in improved operation through at least increased resilience to undesirable accessing of policies by a user of the device to manipulate or delete them.

58.     These limitations additionally cover communications requested by a third-party device directed to a device managed by a control system as claimed in claim 27 of the '438 Patent and its dependent claims.  Effecting control over these incoming

communications to a communication device was not well-understood, routine, or conventional to one of ordinary skill in the art.

59.     Claim 27 of the '438 Patent and each claim depending therefrom are rooted in control schemes for managing communication devices and require remote storage of usage polices which are thereby less vulnerable to manipulation and deletion by the user of the controlled device(s) while still accommodating real-time control concurrent with device usage.  Communication device management in accordance with the systems claimed improve the functionality of the computer-based system through improved security, effectiveness, and robustness of control accommodated.  As such, the claimed systems are directed to patent eligible subject matter.

60.     Additionally, when considered as an ordered combination of elements, claim 27 and each claim depending therefrom comprise an "inventive concept" for at least the reasons presented herein and above.  These claims apply usage policies stored remote from the managed devices, an unconventional arrangement at the time which yielded improvements in the operation of communication device control systems.  The few communication device control systems and methods available at the time of invention of the subject matter claimed relied upon storing settings and policies within accessible portions of the device's memory.  As such, these policies were accessible to users of those devices for manipulation and/or deactivation or deletion, circumventing the control system entirely and requiring that each controlled device be configured separately and individually.  The system of claim 27 and its dependent claims run counter to what was well-understood, routine, and conventional to one of ordinary skill in the art at the

relevant time applying remotely stored policies to effect real-time control over communication devices and provide other benefits, as noted herein and above.[4]

61.     Gryphon has had actual knowledge of the existence of the '438 Patent and Kajeet's infringement allegations against the Accused Products since at least December 30, 2019, the date the Original Complaint was filed. As such, Gryphon's infringement of the '438 Patent has been willful since that time.

62.     Gryphon, without authority, consent, right, or license, and in direct infringement of the '438 Patent, makes, has made, uses, and sells the Accused Products which embody the system claimed in at least claim 27 of the '438 Patent, among others. Gryphon uses the Accused Products in a manner that meets every limitation of at least claim 27.  Gryphon's quality testing and demonstrations of operation of the Accused Products to manage use of computing devices directly infringe, either literally or under the doctrine of equivalents, at least claim 27 of the '438 Patent.

63.     Gryphon actively induces infringement of at least claim 27 of the '438 Patent by its customers and end users of at least the of the Accused Products and is therefore liable for indirect infringement under 35 U.S.C. § 271(b).  A customer's use of the Accused Products to manage computing devices in the manners described above infringes at least claim 27 of the '438 Patent. Gryphon knows that the Accused Products are especially designed for and marketed toward infringing use by Gryphon's customers, to implement feature management of computing devices.  Gryphon has induced, caused,

---

[4] See also the declarations of Dr. Charles D. Knutson, which were attached by Kajeet as Exhibits E and I to its Second Amended Complaint (Dkt. Nos. 144, 144-7, and 144-11). filed in the action styled *Kajeet, Inc. v. Qustodio, LLC*, case no. 8:18-cv-01519-JAK-PLA, in the United States District Court for the Central District of California, Western Division, and which are hereby incorporated by reference.

urged, encouraged, aided and abetted its direct and indirect customers to make, use, sell, offer for sale and/or import one or more of the Accused Products. Gryphon provides step-by-step instructions for installation, setup, and use of the Accused Products to infringe, either literally or under the doctrine of equivalents, at least claim 27 of the '438 Patent. These instructions are provided by Gryphon as user manuals and online content made available by Gryphon through its website, including links to several video tutorials providing instructions for device enrollment and for configuring policies stored on Accused Product hardware such as screen time limits and restrictions on use of certain applications. These videos are created by Gryphon and accessible through its website as well as on Gryphon's YouTube channel.[5]   As such, Gryphon provides step by step instructions to its customers on how to install and set up the Accused Products to operate as described in the chart in paragraph 31. Gryphon likewise provides customers with information about the types of polices that can be set by an administrator and how they are set. Such conduct by Gryphon was intended to and actually did result in direct infringement by Gryphon's direct and indirect customers, including the making, using, selling, offering for sale and/or importation of the Accused Products in the United States. Gryphon knows that its customers are infringing through use of the Accused Products because it operates the servers that store the policies and communicate with the managed devices.

---

[5] See, e.g., links to product literature and YouTube videos on Gryphon's website (at URL: https://gryphonconnect.com/parental-control-router/ and URL: https://gryphonconnect.com/homebound/) which accesses tutorials for device enrollment and setting of time limits and other policies (https://www.youtube.com/channel/UCrjm6lAtUsZb5ffeF9sLydA), among others.

64.     Gryphon contributes to the infringement of at least claim 27 of the '438 Patent by its customers and end users of at least the Accused Products and is therefore liable for indirect infringement under 35 U.S.C. § 271(c).  The Accused Products are especially designed for controlling use of computing devices in the manner described above.  As shown in the chart in paragraph 31, the components in the Accused Products that provide the infringing features have no other purpose than to operate in an infringing manner.  Consequently, the Accused Products have no substantial non-infringing use, as they are specifically designed and marketed for use by parents, teachers, and supervisors to control use of a computing device operating on a communication network.  Setup and use of the Accused Products by Gryphon's customers in the manner constitutes direct infringement, either literally or under the doctrine of equivalents, of at least claim 27 of the '438 Patent.  Gryphon knows that its customers are infringing via use of the Accused Products because it operates the servers that store the policies and communicate with the managed devices.

65.     Kajeet expressly reserves the right to assert additional claims of the '438 Patent against Gryphon.

66.     Kajeet has been damaged as a result of Gryphon's infringing conduct. Gryphon is, thus, liable to Kajeet in an amount that adequately compensates for its infringement, which, by law, cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

67.     Based on Gryphon's actual knowledge of the '438 Patent and of Kajeet's allegations of patent infringement which are consistent with those presented herein since at least December 30, 2019, the date the Original Complaint was filed, if not earlier, as

well as Gryphon's objective recklessness in continuing to offer for sale and selling the of the Accused Products since that time, Kajeet is further entitled to enhanced damages under 35 U.S.C. § 284.

## VI.  JURY DEMAND

68.    Plaintiff hereby requests a trial by jury pursuant to Rule 38 of the Federal Rules of Civil Procedure.

## VII.    PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that the Court find in its favor and against Defendant, and that the Court grant Plaintiff the following relief:

a.    Judgment that one or more claims of the Asserted Patents have been directly infringed, either literally or under the doctrine of equivalents, by Defendant, or judgment that one or more of the claims of the Asserted Patents have been directly infringed by others and indirectly infringed by Defendant, to the extent Defendant contributed to or induced such direct infringement by others;

b.    Judgment that Defendant account for and pay to Plaintiff all damages to and costs incurred by Plaintiff because of Defendant's infringing activities and other conduct complained of herein, including enhanced damages as permitted by 35 U.S.C. § 284;

c.    Judgement that Defendant's infringement is willful from the time Defendant was made aware of the infringing nature of its products and methods and that the Court award treble damages for the period of such willful infringement pursuant to 35 U.S.C. § 284;

d.      That Plaintiff be granted pre-judgment and post-judgment interest on the damages caused by Defendant's infringing activities and other conduct complained of herein;

e.      That the Court declare this an exceptional case and award Plaintiff its reasonable attorney's fees and costs in accordance with 35 U.S.C. § 285; and

f.      That Defendant, its officers, agents, servants and employees, and those persons in active concert and participation with any of them, be permanently enjoined from infringement of one or more claims of the Asserted Patents or, in the alternative, if the Court finds that an injunction is not warranted, Plaintiff requests an award of post judgment royalty to compensate for future infringement;

g.      That Plaintiff be granted such other and further relief as the Court may deem just and proper under the circumstances.

Dated: March 11, 2021           Respectfully submitted,

Of Counsel:                FARNAN LLP

Jonathan T. Suder           /s/ Michael J. Farnan
Michael T. Cooke            Brian E. Farnan (Bar No. 4089)
Corby R. Vowell             Michael J. Farnan (Bar No. 5165)
Richard A. Wojcio           919 N. Market St., 12th Floor
FRIEDMAN, SUDER & COOKE   Wilmington, DE 19801
604 East 4th Street, Suite 200     Telephone: (302) 777-0300
Fort Worth, TX 76102         Facsimile: (302) 777-0301
817-334-0400                bfarnan@farnanlaw.com
Fax: 817-334-0401            mfarnan@farnanlaw.com
jts@fsclaw.com
mtc@fsclaw.com              *Attorneys for Plaintiff Kajeet, Inc.*
vowell@fsclaw.com
wojcio@fsclaw.com